People of the State of Illinois, Plaintiff-Appellee, v.
Willie Ree Harmon, Defendant-Appellant.

Gen. No. 50,768.

First District, Fourth Division.

December 31, 1968.

William C. Starke, of Chicago (Starke, Anglin, Savage, Frazin, Stewart & May, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Two indictments were returned against Willie Ree Harmon on March 24, 1964. The first indictment charged that on March 5, 1964, the defendant murdered Minnie Thomas Cook; the second indictment charged that on the same day the defendant murdered Willie Dean Stewart. Defendant entered a plea of not guilty and was tried before a jury which returned a verdict that he was not guilty of the murder of Minnie Cook, but found him guilty of the murder of Willie Dean Stewart. A motion for a new trial was denied, and the court sentenced the defendant to a term of not less than 25 nor more than 50 years in the penitentiary.

In this court the defendant urges that he was not proved guilty beyond a reasonable doubt; and that the court erred in failing to instruct the jury in the presence of the defendant, his attorneys and the State, in response to a question presented by the jury to the court during the deliberations of the jury. Since the case is being reversed on the ground that the court erred in failing to so instruct the jury, it is not necessary to have a detailed statement of the evidence presented before the court. The evidence was in sharp conflict.

After all the evidence was heard and the jury had been instructed, the jury retired for deliberation. The defendant's attorneys went to dinner at a nearby restaurant and left with the bailiff a written note giving the name, address and telephone number of the restaurant so they could be reached if their presence should be required. Quoting from the State's brief: "In the course of deliberation the jurors phrased a question for the court concerning the possibility of accidental homicide in the slaying of Willie Dean Stewart." On a hearing of the motion for new trial the bailiff testified that in responding to a "buzz" from the jury room,

> "At the time I communicated with the Jury, the Foreman or other persons in the Jury Room asked me certain questions. They asked me something in regard to legal questions, and I told them I couldn't answer them. I did not submit the questions that they submitted to me to the Judge. I merely went back and told the Judge what they wanted me to do. . . . After communicating with the Judge, the Judge merely told me that they heard the evidence and leave the law up to the Judge. I then went back to the Jury Room, informed them what the Judge told me, and they thanked me and I closed the door and came out."

At that time the defendant was not brought into the presence of the court, nor did the witness communicate with any of the counsel in the case, nor did the court ask him to communicate with counsel.

The court then stated the following recollection of the situation:

> "The Bailiff knocked on my door. I opened the door and said, 'What is it?' He said, 'The Jury has a legal question.' I said, 'Call the attorneys.' My recollection is that he said, 'They are not here.' I said, 'Tell the Jury the legal questions will be re-

solved by the Court. They have the problem of the facts. They have all the Instructions.' "

Counsel for the defendant then was given leave to file affidavits, and in support of the motion for new trial, William C. Starke, an attorney for the defendant, filed an affidavit to the effect that both he and his co-counsel left word with the "court captain" that they could be reached at Febo's Restaurant, in the event their presence should be required by the court, and that at no time were they called at the restaurant.

Irwin L. Frazin, an attorney for the defendant, also filed an affidavit in which he stated that he had a conversation with John O'Grady, a member of the jury, who advised him that during its deliberations the jury had occasion to present to the court by a bailiff a question "the contents of which was whether a homicide would be murder or accidental if a person pointed a gun at a second person, the gun accidentally discharged, and a third person was killed." Frazin also stated that he was further advised by O'Grady that to the best of his recollection, the response returned by the court by a bailiff was that the jury had all the facts and should continue to deliberate. Frazin further stated that after he read to O'Grady the question of the jury and the response of the court, O'Grady told him that to the best of his recollection it was correct; and that O'Grady said he would not sign an affidavit.

The court overruled the motion for a new trial.

■ In its brief in this court the State argues that the jury had been properly instructed in the first instance, and that the court gave the jury 15 instructions. The jury apparently had a doubt as to whether the homicides would be murder or accidental death. The first of their doubts was as to the result of a person pointing a gun at a second person, the gun accidentally discharging and killing a third person. There is sufficient in the record to cause the jury to consider that factual ques-

tion. The State quotes in this court from Instruction No. 11:

"The Court instructs the jury, in the language of the statute, that a person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death, he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another."

That instruction does not cover the point raised by the jury, since under this instruction there would necessarily be an intent to kill or do great bodily harm to the person who is killed, or to another. Nor is there anything in the other instructions which would have any tendency to enlighten the jury on the point raised.

In People v. Porter, 11 Ill2d 285, 143 NE2d 250, the rule is laid down that the instructions considered as a whole must fully state the law relating to the theories for prosecution and defense. In People v. Hudson, 258 Ill App 378, the court said at page 381:

"It has been frequently held that a court may give additional instructions in a criminal case after a jury has retired in the presence of the defendant and his counsel where also an opportunity is given to the defendant to submit further instructions if he so desired."

In People v. Tilley, 411 Ill 473, 104 NE2d 499, the question was raised as to whether the judge committed reversible error in communicating with the jury after they had retired to consider their verdict. The trial had ended on a Saturday, and the jury deliberated all night without arriving at a verdict. The next morning the judge went to the jury room in the company of a bailiff, and inquired whether there was any hope of arriving at a verdict. One of the jurors said they wanted further

information, and the judge told them to read the instructions. He explained that any new instructions would have to be given in the presence of the attorneys and the defendant. One of the jurors then asked the meaning of defendant's waiver as to proof of having performed the abortion, and inquired whether defendant in that statement admitted performing an abortion. The judge answered that he had not because the defendant specifically denied that he had performed the abortion. The court found that the jury had been sufficiently instructed, and held that under the decision in People v. Brothers, 347 Ill 530, 180 NE 442, the rule had been announced that judgments will not be reversed when it is apparent that no injury has resulted from a communication to the jury, either by the court or by third persons. The court further held that while the communication by the judge with the jury was "highly imprudent," it was clear that the statements in themselves could by no possibility work an injury to defendant's interest. There was a strong dissenting opinion by Mr. Justice Bristow, and the Supreme Court affirmed the judgment.

In People v. Beck, 305 Ill 593, 137 NE 454, a conviction was reversed. The jury had sent a note by the bailiff to the judge asking if it was unlawful to manufacture intoxicating liquor for one's own use before July 1, 1921. The judge, in the absence of the defendant and his counsel, told the jury he could not instruct them orally in response to the inquiry, and read an instruction to them. The court held the instruction was erroneous, but further held that regardless of the question of the correctness of the instruction, the action of the court was error for which the judgment must be reversed. The court held at page 596:

"The defendant was entitled to a public trial by jury, in every part of which he had a right to participate, to be present at every stage of the proceedings, to know everything that was done, to

299

make objections, and to take such action as he might think best for securing his rights and for his protection. The law is well settled in this State that it is error for which a judgment will be reversed for a trial judge to hold any communication with the jury after their retirement to deliberate upon their verdict, except in open court."

To the same effect is People v. McGrane, 336 Ill 404, 168 NE 321.

In State v. Beeny, 115 Utah 168, 203 P2d 397, the defendants were convicted of rape. After the jury had deliberated for more than two hours they returned to the courtroom and the foreman stated that they would like to know, in view of the fact that defendants admitted having sexual intercourse, whether the jury could consistently find them guilty of a lesser charge than rape. The indictment included other sexual offenses. The court tried to contact counsel for both sides and failed to get in touch with defendant's counsel. The court told the jury that it was not permitted to reinstruct them in that case, and asked if the jury was having difficulty understanding the meaning of any instruction. The foreman replied: "I think we are fairly clear on the instructions, other than in the one set of circumstances that we outlined in the question." The court told the jury that the matter was not for the court, but for the jury to decide, and sent them back. They returned a verdict of rape. In its opinion the court laid down the rule that when the jury retired for deliberation, if there was any disagreement as to the testimony, or if they wished to be informed on any point of law, they must require the officer to bring them into court. The information must then be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel. Under the circumstances, the court should have delayed the proceedings for such length of time as would have

sufficed to make diligent effort to secure counsel's presence. The court held that failure to clarify the instructions was prejudicial to the rights of the defendants, and the judgment was reversed and the case remanded for new trial.

In 23A CJS, Criminal Law, § 1376, at page 1000, it is said:

"If jurors differ as to the instructions they should come into court and have them repeated, or if they wish more information as to the law they should request it of the court, and it has been held that it is not only the right but the duty of the court to reinstruct on any question of law arising from the facts on which the jury say they are in doubt, and on which they ask further instructions. Where the jury make their difficulties explicit, the judge should clear them away with concrete accuracy; and where the question asked is not clear, it is the duty of the court to seek clarification."

The statement is supported by numerous cases from other jurisdictions.

In People v. Gonzalez, 293 NY 259, 56 NE2d 574, the court laid down the rule that "if to a proposed question the Court gives no answer at all or an answer that fails to answer, then the error is reversible." Also see People v. Gezzo, 307 NY 385, 121 NE2d 380.

■ In the case before us, as we have pointed out, the instructions given to the jury did not fully state the law as to the particular matter about which the jury requested further information; and even under the rule laid down in Tilley, previously referred to, the failure to further instruct the jury was prejudicial to the defendant.

■ In any event, the procedure followed by the trial court in its communication with the jury outside the presence of the defendant and his attorney was, in itself,

sufficiently prejudicial to require reversal of the conviction.

The judgment of the Circuit Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.