THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LYNN J. KUCALA, Defendant-Appellant.

(No. 56489;

First District—September 29, 1972.

Raymond J. Smith, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and Lawrence Brodsky, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant Lynn J. Kucala was found guilty of murder after a jury trial and was sentenced to a term of 20 to 40 years. He had been indicted together with Gerald Morrissey, Leroy Dowling, Thomas Millard, Terry May and Donald McCaw for the murder of Herman A. Harris. On the State's motion, he was severed from the other indictees and was tried alone.

On appeal, defendant contends that: the State failed to bring him to trial within 120 days from the date defendant was taken into custody and failed to prove venue; the State discriminated against defendant as compared to the other defendants; the prosecutor's misconduct during the entire proceedings deprived defendant of a fair trial; the prosecutor's final argument was prejudicial; the conviction is devoid of evidentiary support; the trial court erred by failing to give the standard instruction on the defense of the life of another; the trial court erred by failing to clarify a given instruction in response to a written request from the jury; and the court erroneously precluded the impeachment of the witness Alf Berry.

The pertinent facts are set out by the State's witnesses. Alf Berry testified that he, Sam Berry and the deceased Herman A. Harris were driving east on 46th Street in the City of Chicago at approximately 10:00 P.M. on the evening of July 14, 1969. When the muffler of Sam Berry's car began to drag he stopped at the southwest corner of 46th and Wallace Streets. Shortly thereafter three white youths approached from the northeast corner. One of these boys hit Sam twice with his fist and kicked him. Sam threw a lug wrench at the youth and then turned and ran west on 46th Street. Alf Berry also started to run but turned back to see a white youth hit Herman Harris on the left side of the head with a board. Harris then started to run and caught up with Alf Berry. As they were running, a white youth threw a board which hit them and caused them to fall, but Alf was able to get up and continue running. He did not see Harris get up. Alf also stated that the deceased was carrying a small knife.

Sam Berry testified that three white youths came up to him and one of them hit him in the mouth with his fist. Sam Berry then ran to the

back of his car, took a lug wrench from the trunk, threw it at the boy who had hit him, and then began to run west on 46th Street. However, he turned to see a boy hit the deceased on the left side of the head with a board. He stated that he did not pull a knife on any of the white youths nor did he see either of his two companions pull a knife, although the deceased had a small push-button knife in his possession.

Sheila Howard testified that she was sitting at the northeast corner of 46th and Wallace. At approximately 10:00 P.M. she saw three Negroes park their car at the southwest corner and get out to try to fix it. Terry May and Jerry Morrissey were standing next to her on the curb. The defendant pulled up in his car with his girl friend Carol Cash. Subsequently, May and Morrissey walked towards the Negroes' car, and the defendant got out of his car and followed them. Next, Sheila heard Morrissey tell May to get back because "one of them has a knife." However, Sheila stated that she did not actually see a knife. May then called to some other boys on the corner, and Leroy Dowling ran up with two yellow boards in his hands. Dowling gave one of the boards to the defendant. The Negroes then started running west, and May and Morrissey and defendant ran after them.

Carol Cash testified that she and the defendant drove up to the northeast corner of 46th and Wallace at approximately 10:00 P.M. on July 14, 1969. Terry May and Gerald Morrissey came over to the car. Morrissey told them that there were "niggers" on the corner and also said that "they were going to get them." Miss Cash stated Kucala then drove down the block, turned around and returned to the corner. At this point, Carol saw one of the Negroes with a knife to Terry May's throat at an abandoned car which was parked on the northwest corner of 46th and Wallace. Defendant ran over to assist May. Leroy Dowling threw a board to defendant which he used to hit the Negro who had the knife to May's throat. This Negro was not the deceased because Carol saw him after the police had arrived. In the meantime, Carol saw Gerald Morrissey, Terry May and Tommy Millard chasing the other two Negroes.

Leroy Dowling was one of the original co-indictees. He stated that he saw Morrissey, May, Millard and the defendant near the Negroes' car. He saw the defendant Kucala "getting backed out in the street" by one of the Negroes. Although Dowling "figured the guy had something," he did not actually see a weapon. At this point, Dowling ran across the street, picked up two yellow boards and gave one of these boards to the defendant and then went over to the Negroes' car and started knocking out the windows. When the Negroes began running west on 46th Street, Dowling saw defendant start after them with the board in his hands.

Robert Malabarba, a Chicago Police Officer who lived at 629 West 46th Street in Chicago, testified that at approximately 10:00 P.M. he observed a car with three Negro occupants pull to the southwest corner of 46th and Wallace. He observed a fracas on the corner, and saw several people running towards him. He recognized Gerald Morrissey in the group of white youths who were chasing the Negroes. The last Negro boy was grabbed by a white youth and hit by another white youth with his fists. At this time, a third youth hit the deceased twice across the head with a stick. Police Sergeant Francis Power, Officer Malabarba's neighbor, corroborated Malabarba's account of this occurrence. In addition, Sergeant Power testified that he saw one of the Negroes cross the street several times to an abandoned vehicle on the northwest corner. He also stated that he recognized the youth who hit the deceased with the bat to be Gerald Morrissey.

*OPINION*

■■■ Defendant argues that his motion for discharge, pursuant to Ill. Rev. Stat. 1967, ch. 38, par. 103—5(b), should have been granted because he was not brought to trial within 120 days from the date he was taken into custody. The defendant was arrested on July 16, 1969, and remained in custody until the trial began on November 13, 1969. The 120th day of his confinement was November 12, 1969. However, on November 10, 1969, defense counsel made three motions. These included: (1) a motion to dismiss the indictment on grounds of unnecessary delay; (2) a motion objecting to the use of an amended list of witnesses; and (3) a motion to disqualify the Assistant State's Attorney prosecuting the case. Generally, motions occasioned by a defendant which are dilatory in nature or result in delay of criminal proceedings eliminate his right to claim unreasonable delay under the 120-day rule. However, each case must be considered within its own facts to determine whether a defendant's actions toll the right to a speedy trial. In this case, defendant presented three substantial motions to the court two days before the running of the term. Under these circumstances we conclude that the motions of the defendant occasioned delays within the meaning of the statute. See *People v. Jones* (1971), 130 Ill.App.2d 769, 772, 266 N.E.2d 411, 413-414.

■■■ Defendant also contends that the State failed to prove venue as charged in the indictment. He maintains that the evidence does not establish proof of venue in that not one occurrence witness testified that the offense occurred within the City of Chicago or the County of Cook. We do not agree. Our review of the record reveals that the witness Alf Berry answered in the affirmative when he was specifically asked if the events of this crime occurred "in the City of Chicago, County of Cook

and State of Illinois." Other factors also in evidence are sufficient to establish venue—for example, the testimony of Chicago Police personnel, and the description of street locations and street names. These factors come within the rule that the venue of an offense may be proved by circumstantial evidence. See *People v. Allen* (1952), 413 Ill. 69, 76-77, 107 N.E.2d 826, 829-830.

■■■ The prosecution's motion for severance prior to trial is also assigned as reversible error. Defendant argues that the record discloses he could not have received a fair trial because he was singled out from his five co-defendants in a prejudicial manner to be tried alone as the primary defendant. With regard to a severance, the general rule is that whether a separate trial should be granted is largely within the judicial discretion of the trial court. (*People v. Ross* (1968), 41 Ill.2d 445, 461-462, 244 N.E.2d 608, 618-619.) We find nothing in this case that indicates prejudice to defendant or an abuse of the trial judge's discretion.

■■■ Defendant points to a violation of the mandates of *Brady v. Maryland* (1963), 373 U.S. 83, in that the prosecution failed to disclose to defendant counsel that co-defendant Terry May had given the State a statement shortly after the incident that one of the Negroes had a knife in his possession at the scene of the crime. When the defense made a pre-trial motion under *Brady* for all evidence favorable to defendant, the prosecution indicated that all such evidence had been provided. May's statement had not been tendered. In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to defendant's guilt. Since the question of a knife was central to defendant's theory of the case, and several witnesses testified about the presence of a knife, its materiality is sufficiently established. We find that the prosecutor's failure to produce May's statement, irrespective of his good or bad faith, was prejudicial to defendant.

Defendant next argues that the trial court erred in its failure to give an instruction on the defense of the life of another. The defendant tendered Illinois Pattern Jury Instruction 24.06,[1] and the court refused to give it to the jury. Defendant maintains that this instruction was warranted by the evidence because he became involved in the fight only in

---

[1] I.P.I.-Criminal 24.06 as given provides: "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend another against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent great bodily harm to another."

an effort to assist Terry May and after one of the Negroes pinned May against an abandoned car and placed a knife to his throat.

■■■ A defendant is entitled to have the jury instructed on the law applicable to a particular set of facts which the jury might find to have been proven by the evidence. Even if there is only slight evidence relating to defendant's theory of the case, he is entitled to an instruction on that theory. (*People v. Kalpak* (1957), 10 Ill.2d 411, 424-425, 140 N.E.2d 726, 734; *People v. Sweeney* (1969), 114 Ill.App.2d 81, 89, 251 N.E.2d 897, 901.) The testimony of Carol Cash placed the issue of the defense of the life of another before the jury. Miss Cash testified that she saw what looked to be a knife being held to Terry May's throat. According to Miss Cash, it was at this point that defendant became involved in the fight. Sheila Howard also testified that she heard Gerald Morrissey tell Terry May to get back because "one of them has a knife." Further, both Alf Berry and his brother Sam Berry testified that the deceased had a knife in his possession on the night of the fight. The cumulative testimony presents at least some evidence to support defendant's theory that he had acted in "defense of another." Accordingly, we find that it was error to refuse to instruct the jury with the standard instruction on the defense of the life of another.

■■■ Defendant further assigns as error the trial court's refusal to clarify an instruction that had been given to the jury. After several hours of deliberation, the jury submitted a written request to the judge asking clarification of the given instruction as follows: "A question remains in some members of the jury's minds as to when a forcible felony starts * * * [S]pecifically when Sam Berry was hit or when H. A. Harris was hit." It is argued that the hitting of Sam Berry with a fist by Terry May did not constitute a forcible felony. (See *People v. Crenshaw* (1921), 298 Ill. 412, 416-417, 131 N.E. 576, 577-578.) Defendant argues, therefore, that his participation at that point did not necessarily carry over to the attacks on the deceased. Several intervening occurrences in evidence could have changed the jurors minds about defendant's accountability for the murder of Herman Harris. These included testimony about the throwing of a lug wrench by Sam Berry, the existence of a knife and the threat to Terry May. Under these circumstances, we find that the trial court's refusal to further instruct the jury was prejudicial to defendant. Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members. See *People v. Harmon* (1968), 104 Ill.App.2d 294, 301, 244 N.E.2d 358, 361, citing 23A CJS, Criminal Law, par. 1376, at page 1000.

■■ Defendant then contends that his conviction is devoid of evidentiary support. We cannot say, as a matter of law, that the evidence in this case is so unreasonable or unsatisfactory that it justifies this Court to entertain a reasonable doubt of defendant's guilt. However, defendant is entitled to a new trial free from the errors set out above. Accordingly, it is not necessary to consider all of defendant's other assignments of error. However, for purposes of a new trial, one final question remains to be considered. Defendant has contended that the court erroneously precluded the impeachment of the witness Alf Berry, a State's witness. The trial court refused to permit cross-examination of Berry for the purpose of impeaching him by proof of a prior felony conviction. On a retrial, we feel that the trial judge should be guided on this question of admissibility by the guidelines set down in *People v. Montgomery* (1971), 47 Ill.2d 510, 268 N.E.2d 695.

This cause is reversed and remanded for a new trial not inconsistent with the views herein expressed.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.