The People of the State of Illinois, Plaintiff-Appellee, *v.* Charles Almond, Defendant-Appellant.

(No. 60769;

First District (4th Division)—August 13, 1975.

James J. Doherty, Public Defender, of Chicago (Donald Paull and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Kevin Sweeney, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Charles Almond was charged with aggravated battery and attempted rape. After a bench trial, he was found not guilty of aggravated battery and guilty of attempted rape. Consequently, he was sentenced to the Illinois State Penitentiary for a term of not less than 1 year, nor more than 3 years. Defendant appeals and raises the following issue on review: whether the State proved beyond a reasonable doubt that defendant had the specific intent to rape the prosecutrix or that defendant committed an act which constituted a substantial step toward rape.

The prosecutrix, the State's first witness, testified that on August 17, 1973, as approximately 1 or 1:15 a.m., she was walking down Archer Avenue and was attacked by the defendant when she reached the corner

of 61st Place. The defendant came up behind her, put one arm around her waist, and knocked her to the ground. He strangled the prosecutrix and pulled her in the direction of the alley, demanding that she get up and threatening to kill her. When the parties heard car tires squealing, the defendant ran in the direction of the alley. A bystander who witnessed this occurrence helped the prosecutrix stand up, but her pants, which had been unzipped or unbuttoned during the altercation, fell down. The prosecutrix stated that she skinned her knees and elbows and sustained a temporary injury to her voice box. In completing her testimony, the prosecutrix stated that she had never seen the defendant prior to the incident.

The next witness, Walter Gniadek, testified that he was walking on Archer Avenue at 61st Street at approximately 1 or 1:15 a.m. when he saw the defendant and the prosecutrix. He stated that the defendant apprehended her by holding his hand around her neck. The parties walked 30 feet and the defendant held the complaining witness against a red car and attempted to unbutton her clothing. Shortly thereafter, a policeman drove up and the defendant ran in the direction of the alley.

The final witness for the State was Anthony Corbo, a captain in the Summit police force. Captain Corbo testified that he was patrolling alone in a squad car and traveling north on Archer Avenue at 59th Street when he noticed the prosecutrix walking in a southerly direction. Then he observed the defendant on the opposite side of the street, acting in a suspicious manner. Defendant, rather than walking in the direction of the curb or the street, was walking in the direction of the buildings. After witnessing these events, the officer turned his car around and parked it in an area that permitted him to observe the defendant and prosecutrix simultaneously. The defendant crossed the street and when the prosecutrix crossed 61st Place and Archer Avenue, the defendant ran up behind her and put one arm around her neck and the other arm down by her trousers. The prosecutrix was pushed to the ground and defendant was dragging her toward the alley. It was at this time that Officer Corbo jumped into his squad car and proceeded to the area. When he arrived on the scene, the defendant dropped the prosecutrix and started to run east on 61st Place to an alley and was pursued by the officer in his squad car. Captain Corbo apprehended the defendant and upon returning to the scene, he noticed that the prosecutrix's pants were down to her knees and she had trouble speaking.

After the State rested its case, the defendant was called as a witness. Almond testified that he was on his way to work and needed change for a $20 bill so he stopped in a bar on 57th Street. He stated that it was difficult to get change for a $20 bill so he asked a woman sitting at the

bar, the prosecutrix, if she wanted a drink and when she accepted, he asked the bartender to get her what she was drinking. The defendant had to go to the bathroom so he told the bartender to hold his change until he returned. When he returned, the woman and his money were gone. He rushed to the door, looked up and down the street, but he didn't see her. Defendant decided that there was nothing he could do and proceeded to work at Trumbull Asphalt, which is about two blocks from the tavern, when he saw the prosecutrix getting out of a car. He crossed the street and followed her to 61st Street where he caught her. Defendant called her and she turned around and recognized who he was and attempted to run but she fell over the curbstone. Defendant reached for her jacket but before he could get his money out of her pocket, a policeman had arrived, put a light on him, and approached him with a gun. Defendant was frightened so he ran but he was captured a short distance away.

The prosecutrix was recalled as a rebuttal witness and she testified that she was returning from a girlfriend's house and that she had not been in the bar on 57th and Archer. Then the court recalled Officer Corbo and examined him. Captain Corbo stated that the defendant told the officer that the prosecutrix stole $10 from him on the corner of 61st and Archer. The captain also testified that he asked the prosecutrix at the station if she had $10 and she said no. Finally, the officer testified that he never saw the prosecutrix get out of an automobile on the bridge on Archer Road.

■■ Defendant contends that the State failed to prove beyond a reasonable doubt that he had the specific intent to rape the prosecutrix, or that he committed an act which constituted a substantial step toward raping her. We disagree with defendant's contentions. The crime of attempt is defined by the Criminal Code as follows:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1971, ch. 38, § 8—4(a).)

The specific offense, rape, is defined as follows:

"A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape." (Ill. Rev. Stat. 1971, ch. 38, § 11—1(a).)

This court has held that the intent with which an act is committed may be inferred from the act itself and the surrounding circumstances (*People v. Chambers* (1973), 15 Ill.App.3d 23, 27, 303 N.E.2d 24; *People v. Morris* (1972), 7 Ill.App.3d 1055, 1057, 289 N.E.2d 73), and if the intent is not admitted it can only be demonstrated from the surrounding circum-

stances. (*People v. Bazzelle* (1970), 130 Ill.App.2d 131, 264 N.E.2d 457.) In *People v. Triplett* (1970), 46 Ill.2d 109, 263 N.E.2d 24, *cert. denied* (1971), 401 U.S. 955, 91 S.Ct. 967, 28 L.Ed.2d 239, the defendant argued that there was no proof of an intent to commit rape since it was not shown that he explicitly stated such an intention to the complainant. However, the court concluded, in spite of defendant's failure to vocalize his intent. that intent could be inferred from the circumstances of the assault.

By considering the surrounding circumstances of the assault it can also be determined if defendant took a substantial step toward the commission of the offense. In *People v. Bonner* (1967), 37 Ill.2d 553, 229 N.E.2d 527, our supreme court was presented with a substantial step question in an attempted rape case. In *Bonner* the complainant was walking home when she was attacked by the defendant. He pulled down the complainant's slip, tore her blouse, and attempted to pull off her skirt. The court indicated that certain facts were dispositive of the case and these were that the complainant was a woman; that she was a stranger to defendant; that the assault occurred during the early hours of the morning; and that the assault was violent in that the victim was thrown to the ground. The court found the defendant guilty in that case in spite of the fact that the offense was not voiced in language and the victim was not sufficiently overcome for the assailant's physical acts to more completely manifest his intentions.

In *People v. Hornbuckle* (1972), 7 Ill.App.3d 328, 287 N.E.2d 294, this court reached the same result. In that case the defendant attacked the complainant in a park, knocked her to the ground, choked her, ripped her halter, and pulled at the waist of her shorts. The court felt that complainant's struggle would make a consummated act of intercourse rape since it was completed with force and against her will. The court concluded that the ripping of the halter coupled with the assailant's attempt to remove the complainant's shorts constituted a substantial step toward the commission of the offense.

The preceding cases clearly set forth some of the relevant facts to be considered by courts reviewing attempt rape cases. In the instant case, as in *Bonner,* the complainant was a stranger to the defendant; the assault occurred at about 1 a.m. and, therefore, was in the early hours of the morning; and, finally, the assault was violent since the prosecurtix was not only knocked to the ground but was pulled in the direction of an alley. The instant facts are like those in *Hornbuckle* in that the prosecutrix was choked and there was an attempt to disrobe her.

We feel that the defendant's choking the prosecutrix and pulling her in the direction of an alley, coupled with his attempt to disrobe her con-

stituted a substantial step toward the commission of the crime of rape. Moreover, a trial court could infer from these circumstances, in spite of the fact the assailant never vocalized his intent, that he intended to rape the prosecutrix. Consequently, we hold that the acts of defendant in this case were in furtherance of the substantive crime of rape and constituted a substantial step toward the commission of the offense from which the trier of fact could infer the specific intent needed to convict the defendant of the offense charged.

■■ In a sexual assault case the findings of the trier of fact, who saw the witnesses and observed their demeanor, will not be overturned unless they are contrary to the weight of the evidence. (*People v. Hiller* (1955), 7 Ill.2d 465, 470, 131 N.E.2d 25.) In *People v. Reese* (1973), 54 Ill.2d 51, 57-58, 294 N.E.2d 288, the court commented on the duty of reviewing courts in rape cases and stated:

> "Courts of review have a special duty of carefully examining the evidence in rape cases. [Citation.] But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence which was presented. [Citation.] That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. [Citations.] A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. [Citation.]"

In the instant case, after reviewing all the evidence presented, we do not think that findings of the trial judge were unreasonable, improbable, or unsatisfactory. Moreover, the evidence did not create a reasonable doubt as to the guilt of the accused. The testimony of the State's witnesses was consistent, and the evidence was in no respect contrary to the findings.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and ADESKO, J., concur.