THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES PALMER, Defendant-Appellant.

First District (2nd Division)   No. 81—743

Opinion filed December 28, 1982.

Steven Clark and Scott Graham, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Rhoda W. Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, James Palmer, was charged by indictment with two counts of armed robbery and two counts of armed violence. Pursuant to the State's motion, the trial court *nolle prossed* the armed violence counts. Following a jury trial, defendant was convicted of both armed robbery counts and sentenced to concurrent terms of six years.

The principal issues raised on appeal include whether: the State improperly withheld exculpatory evidence; defendant was denied a fair trial by the circuit court's response to various jury requests; and, the State carved two offenses from the same act in violation of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

On February 17, 1980, at approximately 3 a.m., Laura Martin and Brenda Wilson were working together at a 7-Eleven store in Chicago. Martin testified that defendant brought some Mountain Dew and a bag of Ruffles potato chips to the front counter and asked for beer nuts. Defendant did not have enough money and said that he would go back to the car for additional cash. Wilson put the items in a paper bag. Defendant returned to the counter. He pulled out what appeared to be a revolver and said, "*** give me the money you have in the register." Martin was standing behind Wilson at the register. Martin opened the register and defendant took approximately 20 single dollar bills and about $5 worth of change. Defendant left the store and went around the side of the building. A number of police officers jumped out of their cars and ran toward the alley. Several seconds or minutes elapsed from the time defendant left the store until the police arrived.[1] A couple of hours after the incident, in a hospital emergency room, Martin identified defendant.

---

[1]At a post-trial hearing, Wilson stated that the police arrived "seconds" after the offender left the store.

Police Officer Roger Gregory stated that he and his partner arrived at the grocery store shortly after 3:15 a.m. on the day of the incident. He observed a man run from the store to a car. They chased the car on foot, because the cement guardrail in the alley prevented access with their squad car. They ran about a half block, getting within five feet of the vehicle at one point. It was a yellow Buick with a black top, license No. KR 789, stipulated to have been registered to Irene Tanksley. When recalled as a defense witness, Gregory testified that the car was a 1974 Buick. Other evidence reveals that on the day in question defendant was living with Tanksley.

Police Officer Charles Gardner testified that he observed numerous police vehicles chase a black and yellow Buick, license No. KR 789. He moved his car to cut off the Buick. Another police car collided with the Buick. A male Negro fled the Buick. As he ran around the corner, Gardner lost sight of him briefly and heard two apparent gunshots and saw flashes coming from the direction of the men. When Gardner turned the corner, he saw defendant stooping down. The officers told defendant he was under arrest. When defendant struggled, they wrestled him to the ground and handcuffed him. Defendant was injured during the struggle and was taken to the hospital.

Gardner testified that his partner found approximately 21 one-dollar bills and a quantity of change in defendant's pants pockets. Inside the Buick, Gardner observed a bottle of Mountain Dew and a bag of potato chips. 7-Eleven tags were on both items. No weapon or shell casings were found in the area. The potato chips and Mountain Dew were destroyed approximately four months after the incident, apparently because the wrong box had been checked on the inventory sheet. The money found on defendant was deposited in a bank and commingled with the other currency of the city.

Defendant, 28 years old, testified on his own behalf. He did not commit the crime. On the morning in question he was driving home in a 1969 Buick, which had a black top and white bottom. He saw a police car with flashing lights. he heard a shot behind him and panicked. He drove east where he met another police car which was shooting at him. His car crashed into a fire hydrant. he got out and put up his hands. The police pulled their guns, handcuffed him, and found that he had two $5 bills. The police walked him between a gangway. They wanted him to confess to the robbery. He denied it. They beat him until he lost consciousness. He was taken first to a police station and then to a hospital for treatment to his injured face and ribs.

# I

Defendant maintains that his right to a fair trial was denied by the failure to the State to disclose that a crucial eyewitness, Brenda Wilson, was unable to identify him as the offender at a showup. Defendant filed a motion for discovery and inspection requesting, *inter alia*, the "names of any individuals who confronted the accused and made no identification ***." In responding to defendant's request, the State did not disclose Wilson's name. Shortly before trial, an investigator testified that he had personally served Wilson with a subpoena commanding her to appear in court. Immediately following this testimony and pursuant to the State's motion, the circuit court issued an arrest warrant for Wilson for contempt of court.

Although she did not testify at trial, during a hearing on defendant's post-trial motions, Wilson stated that two hours after the incident the police took her to a hospital. She was shown a man lying in bed. She told them that she did not know if that was him because his face was "messed up" and disfigured. She did not tell the police or the State's Attorney that the person they had was the person who committed the offense. The person who robbed the the store was not present in the courtroom.

At this same hearing, the assistant State's Attorney testified that he met with Wilson and Martin on a day when the case was set for trial. Wilson specifically told him that she would not have any trouble identifying defendant. She told him that "when she identified the defendant at the hospital" Martin was not present. On a later date he telephoned Wilson and informed her of a new court date. She told him she could appear.

■ The issue raised is whether the State's failure to disclose that Wilson did not identify defendant at a showup denied him his due process and statutory rights. The suppression by the prosecution of material evidence favorable to an accused violates due process. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *People v. Hoffman* (1965), 32 Ill. 2d 96, 99-100, 203 N.E.2d 873.) When the State receives a specific and relevant request from defendant, the failure to make any response is seldom, if ever, excusable. (*United States v. Agurs* (1976), 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.) Supreme Court Rule 412(c) requires:

> "*** [T]he State shall disclose to defense counsel any material or information *within its possession or control* which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (Emphasis added.) (73 Ill. 2d R. 412(c).)

The omitted evidence must be evaluated in the context of the entire record. *People v. Burns* (1979), 75 Ill. 2d 282, 288, 388 N.E.2d 394.

Defendant's contention must be rejected, since manifestly, the State cannot disclose any exculpatory evidence, however specific, relevant and material it may be, which it does not possess. (See 73 Ill. 2d R. 412 (c), (f).) As a practical matter, the failure to disclose nonexistence exculpatory evidence which surfaces after defendant's trial cannot violate *Brady* and its progeny. In this situation nothing has been suppressed. Defendant cites no authority to the contrary. The cases relied upon by defendant. *e.g., People v. Burns* (1979), 75 Ill. 2d 282, 388 N.E.2d 394, *People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442, *People v. Bass* (1980), 84 Ill. App. 3d 624, 405 N.E.2d 1182, and *People v. McCabe* (1979), 75 Ill. App. 3d 162, 393 N.E.2d 1199, are inapposite, since in those cases the State or one of its departments was in timely possession of the requested evidence. In considering defendant's motion for a new trial, the circuit court was not compelled to believe the post-trial testimony of Wilson. The court could have reasonably concluded, from the assistant State's Attorney's testimony and the State's considerable efforts to call Wilson as one of its witnesses, that the exculpatory evidence in question was not in the possession of the State or any of its police officers until after the trial's termination.[2]. *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331.

## II

■ ■ Defendant next maintains that the "indictment procedure" denied him due process of law; the grand jury testimony of Officer Gardner, allegedly indicated that he had a past record and that the car in question was registered to defendant, which was false and thereby deprived him of due process of law. Defendant, however, has failed to include a transcript of the grand jury proceedings in the record on appeal. The responsibility for the proper preservation of the proceedings below rests upon the appellant in an appeal. (*People v. Smith* (1969), 42 Ill. 2d 479, 483, 248 N.E.2d 68.) A question not presented by a record will not be considered on review. *People v. Wilson* (1981), 92 Ill. App. 3d 370, 386, 415 N.E.2d 1315.

Assuming, *arguendo*, that the matter had been properly presented, defendant's argument is unfounded nevertheless. A circuit court has authority to dismiss an indictment in a criminal case where

---

[2]The police report also stated that each victim at the hospital independently identified the suspect as the offender.

there has been a "unequivocally clear denial of due process" even though that is not a stated ground in section 114—1 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1979, ch. 38, par. 114—1; *People v. Lawson* (1977), 67 Ill. 2d 449, 455-56, 367 N.E.2d 1244.) The subject vehicle may not have been registered to defendant as suggested by Gardner's purported testimony, yet defendant had ready access to it. Indeed, the car was registered to the woman with whom defendant lived at the time of the crime and defendant admitted driving this car on the day in question. In view of these latter facts, defendant's contention, that the challenged statement was "false testimony on a point essential" to his defense, must be rejected. The significance of the other misstatement, concerning defendant's prior record, was diminished, if not eliminated, by the assistant State's Attorney's admonishment to the grand jury that any past record not be considered by it.

Defendant's reliance on *People v. Rivera* (1979), 72 Ill. App. 3d 1027, 390 N.E.2d 1259, is misplaced. In *Rivera* the court stated in dicta that an indictment could be properly dismissed "upon perjured testimony if the denial of due process was established 'with certainty.'" (72 Ill. App. 3d 1027, 1038.) Defendant here merely has shown the presence of two misstatements which manifestly do not rise to the level of perjury or a clear denial of due process. (*People v. Rodgers* (1981), 98 Ill. App. 3d 999, 1001, 424 N.E.2d 1312.) We find no error.

### III

■ A. During its deliberations, the jury submitted several written questions to the circuit court, including the following:

"L. Martin—did she state a bottle or a can of Mountain Dew?"
The circuit court found that this question called for the testimony of Martin and related to her credibility. It summoned the appropriate court reporter, who was not present in the building. The court purportedly did not inform the jury of this fact. Approximately three hours later, before the court reporter arrived, the court was informed that the jury reached a verdict. The court disallowed defendant's motion to have Martin's testimony read to the jury before they returned their verdict.

Defendant contends that the court erred when it purportedly failed to notify the jury of the fact that it had summoned the court reporter. This argument is contrary to the record. First, defendant's citation to the record does not demonstrate that the court so failed to notify the jury. Indeed, during argument on defendant's motion for a

new trial, the following colloquy took place:

"[The court]: \*\*\* [I]t is my recollection that \*\*\* it was the court's instruction to the deputy to inform the jury that the court reporter had been sent for. Albeit this communication took place perhaps two hours before the verdict was reached.

"[Mr. Deckler (defense counsel)]: Correct."

Second, assuming for the sake of discussion that the jury was not notified of the decision to summon the court reporter, there was no error. Defendant fails to cite any case in support of his proposition that a jury must be properly notified of the summoning of the court reporter.

It is within the sound discretion of the circuit court to allow or refuse a jury's request for the review of the testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 363-64, 308 N.E.2d 577.) The question of notification, "like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion." (*People v. Pierce* (1974), 56 Ill. 2d 361, 364.) Assuming that the circuit court determined not to notify the jury that a review of the transcript was forthcoming, that decision was not an abuse of discretion. (See *People v. Pierce* (1974), 56 Ill. 2d 361, 363-64.) Its ultimate conclusion, in effect, that a review of Martin's testimony was not necessary for the jury's verdict was, under the circumstances, entirely proper. *People v. Bibbs* (1981), 101 Ill. App. 3d 892, 898, 428 N.E.2d 965.

B. During its deliberations, the jury made the following written inquiry:

"Do the charges of Armed Robbery apply to both parties *or* are they separate and distinct charges? If they are separate and distinct charges is it *appropriate* to render opposite decisions?" (Emphasis added.)

The circuit court found that the answers to these questions were in the jury instructions and declined to comment thereon.

On appeal, defendant maintains that the "obvious" basis for the jury's confusion was in the following instruction (Illinois Pattern Jury Instructions, Criminal, No. 14.02 (2d ed. 1981) (hereinafter IPI Criminal):

"To sustain the charge of armed robbery, the State must prove the following propositions:

*First*: That the defendant took United States Currency from the person or presence of Laura Martin and/or Brenda Wilson; and

*Second*: That the defendant did so by the use of force or by threatening the imminent use of force; and

*Third*: That the defendant was armed with a dangerous weapon.

\* \* \*"

Defendant contends that based on this instruction, it appeared that the jury was required to find defendant guilty of both charges if it found the element contained in the instruction applied to either Martin or Wilson. Defendant observes that the jury was given separate verdict forms: one for the armed robbery of Wilson and one for the robbery of Martin. He concludes that the conflict between this instruction and the separate verdict forms required further clarification by the circuit court.

At trial, defense counsel did not object to the court's ruling on the subject inquiries, and therefore, the issue cannot be asserted on appeal. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ Even were we to assume that this issue has not been waived, defendant's contention cannot be sustained. A circuit court may properly exercise its discretion and decline to answer the jury's inquiries where the given jury instructions are readily understandable and sufficiently explain the relevant law. (*People v. Ross* (1981), 100 Ill. App. 3d 1093, 1096-97, 427 N.E.2d 868; *People v. Blair* (1981), 102 Ill. App. 3d 1018, 1028, 429 N.E.2d 1375.) Here, the jury instructions given were adequately clear to apprise the jury of the applicable law.[3]

The cases relied upon by defendant, *People v. Land* (1975), 34 Ill. App. 3d 548, 340 N.E.2d 44, and *People v. Morris* (1980), 81 Ill. App. 3d 288, 401 N.E.2d 284, are not in point. In *Land*, the circuit court refused to permit the jury even to disclose the substantive contents of its question. In *Morris* the given jury instructions were incomplete. (*Cf. People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1138, 425 N.E.2d 1313.) Neither circumstance is present here. Accordingly, the circuit court did not abuse its discretion by declining to respond to the jury's queries where the given instructions sufficiently explained the pertinent law. *People v. Ross* (1981), 100 Ill. App. 3d 1093, 1096-97; *People v. Tostado* (1981), 92 Ill. App. 3d 837, 839, 416 N.E.2d 353.

## IV

In its written order, the circuit court unequivocally imposed two concurrent six year sentences, one for each armed robbery conviction. Defendant maintains that this judgment violated the rule in *People v.*

---

[3]In addition to the challenged instruction, the jurors were also given People's Instruction No. 5, IPI Criminal No. 2.01, and People's Instruction No. 10, IPI Criminal No. 14.01.

*King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, against carving two offenses from the same act. We agree.

A person commits a robbery when "he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1979, ch. 38, par. 18—1(a).) The presence requirements of this statute relates to the property taken; it must have been in the presence or control of the victim. (*People v. Smith* (1980), 78 Ill. 2d 298, 303, 399 N.E.2d 1289.) In the present case, defendant committed only one act of armed robbery: he took money and groceries from the presence of both Wilson and Martin by threatening the imminent use of force. Therefore, it was improper for the State to create more than one offense from this single physical act. *People v. King* (1977), 66 Ill. 2d 551, 566; see *People v. Velleff* (1981), 94 Ill. App. 3d 820, 826, 419 N.E.2d 89.

The State argues that defendant committed more than one act, but does not clearly identify the nature of those acts. The State's reliance on *People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516, is of no aid. In *Moore,* the court held that since the taking of the cash occurred at a different time than the taking of the other property, defendant could be properly convicted on two counts of armed robbery. In contrast here, property was taken in a single act from the presence of two persons. The fact that this case involves more than one employee is immaterial. *Cf. People v. Gaines* (1981), 88 Ill. 2d 342, 367-68, 430 N.E.2d 1046.

For the aforementioned reasons, we affirm defendant's conviction and sentence based on the armed robbery of Martin. We vacate the conviction and sentence based on the armed robbery of Wilson.

Affirmed in part; vacated in part.

STAMOS, P.J., and PERLIN, J., concur.