THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK V. SHANNON, Defendant-Appellant.

Fourth District   No. 4—90—0185

Opinion filed December 6, 1990.

STEIGMANN, J., dissenting.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LUND delivered the opinion of the court:

After a jury trial, defendant Frederick V. Shannon was convicted of the offense of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4) and was sentenced to two years' imprisonment. Defendant appeals, contending: (1) the State failed to prove the element of intent as it related to great bodily harm to the victim; (2) the trial court abused its discretion in denying an *in limine* motion which would have prohibited the victim's wife from testifying, as well as the in-court display of the victim; and (3) the trial court committed reversible error when it refused to respond to an inquiry from the jury which indicated its question about the proof of intent.

### FACTS

The charges against the defendant resulted from an incident in the Rogers Theatre parking lot on September 14, 1988, at about 7:30 p.m. The parking lot, which is located immediately west of the theatre, is leased to the owner of Jimmy's Tavern, which is located east of the theatre. The properties are on the north side of East Wood Street in Decatur.

While leaving the parking lot in his pickup truck, a piece of concrete was thrown through the driver's window, hitting LaVern Ulland on the left side of his head. Ulland's skull was fractured above the eye, the brain was bruised, and a blood clot developed. The victim was 62 years old and underwent at least two surgeries. He was hospitalized for a period of time and has lost speaking and thinking abilities.

Larry Shaw, owner of the tavern, testified that customers' vehicles were being vandalized in the parking lot. On September 14, 1988, he had parked in the lot to observe if any wrongful activities were taking place. At this time, Ulland's truck was parked on the lot and Ulland was in the tavern. Shaw observed four teenagers on the lot near an outcropping on the west side of the theatre building. He then went into the tavern to discuss the matter with an employee, Mike Booth. Shaw, together with Mike Rose and Steve Smith, then left the tavern by the front door to go to the parking lot. Booth, together

with Dave Miller, went to the lot using the tavern's back door. Ulland stayed in his seat at the bar.

According to the testimony of Shaw, Booth, Miller, Rose, and Smith, they approached the four youths, and Booth, in a calm manner, explained that they should leave the lot because of the history of vandalism. The four were not pleased, but did not argue. At this time, the defendant and another male came across the street, used some vulgarity toward the men, and, together with the other four teenagers, began walking north off the lot. Booth testified the men remained calm and did not talk to the defendant. According to the five witnesses for the State, only Booth talked to the teenagers; and he did so politely.

The State witnesses testified that as the six teenagers were leaving the lot by going in a northerly direction, Ulland came to the lot, stood for a short time and said, "See ya, Bubba [Dave Miller]. I'm going to the truck." According to the witnesses for the State, he did not talk to the teenagers. He backed his truck in a southeasterly direction, heading to the north, with his headlights shining toward the teenagers. The witnesses testified he killed the motor once, restarted it, and was driving slow. According to the witnesses, one of the teenagers ran to the front of the truck with a coat, playing like a bullfighter. There was testimony that the defendant ran along the passenger side of the truck toward the rear, stopped to pick something up, went around the back of the truck to the driver's side, and appeared to throw something at Ulland. The truck motor revved up to a high speed, and Ulland slumped over the steering wheel. The vehicle evidently did not move. The teenagers ran, and some of the men who had come from the tavern approached the truck to find blood coming from Ulland's head, with a piece of concrete with blood and hair on it on the truck seat.

The defendant produced a 14-year-old and two 13-year-old girls as occurrence witnesses. They testified they were across the street and saw the truck going back and forth trying to run over the teenagers. The defendant testified that Ulland was trying to hit them. He stated he was on the right side of the truck and threw a rock, and a person named Adrian threw a rock through the driver's side window. The defendant did call in a complaint to the police later that same evening, contending that the driver of the pickup truck had tried to hit them. The account of Ulland trying to hit the teenagers is in direct conflict with the testimony of all the State's witnesses.

I

■ ■ Defendant first argues the State failed to prove beyond a

reasonable doubt that he intended to cause great bodily harm. One of the elements of the offense of aggravated battery is intentionally or knowingly committing an act causing great bodily harm. (*People v. Roman* (1981), 98 Ill. App. 3d 703, 706, 424 N.E.2d 794, 797; Ill. Rev. Stat. 1987, ch. 38, par. 12—4(a).) Defendant admits there exists an ordinary presumption that a person intends the natural and probable consequences of his act (see *People v. Hartzol* (1976), 43 Ill. App. 3d 924, 926, 357 N.E. 2d 729, 731), but argues the presumption shifts only the burden of production, not persuasion, to the defendant as to his mental state, citing *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450. Defendant then correctly states once he introduced evidence contrary to the presumption, the presumption ceased to have effect. *People v. Farrell* (1980), 89 Ill. App. 3d 262, 265, 411 N.E.2d 927, 930.

■ However, the *Farrell* opinion goes further and says "after Farrell denied intending to cause aggravated damage, the State had to prove his intent by circumstantial evidence." (*Farrell*, 89 Ill. App. 3d at 265, 411 N.E.2d at 930, citing *People v. Almond* (1975), 31 Ill. App. 3d 374, 376, 333 N.E.2d 236, 238.) Farrell's conviction of aggravated battery resulted from his hitting the victim in the eye with his fist, and the appellate court affirmed the conviction. Here, as in *Farrell*, there is substantial evidence of defendant's hostile action, though contrary to what defendant related, that forms a basis for the finding that the criminal intent existed. The State's witnesses testified to different conduct of the defendant than what he related. There was specific testimony of defendant throwing the piece of concrete in the driver's side window. Rather than believing defendant's account of the victim trying to run defendant and his friends down, the fact finder had ample evidence of defendant and his friends harassing the victim. Resolution of factual disputes and the assessment of the credibility of the witnesses is for the jury, and the reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. (*People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136, 138.) There was adequate proof of the criminal intent to sustain the jury's determination.

## II

The defendant contends the trial court committed reversible error in allowing the victim's wife to testify as to his present condition and erred in allowing the victim to appear before the jury. The alleged error is based on the evidence being so prejudicial as to outweigh the

probative value, and that it was cumulative to that presented through the medical doctors who testified. It is also contended that defendant did not contest the extent of the injury, so no basis for the evidence exists.

■ The defendant entered a plea of not guilty and contended he did not throw the rock which hit the victim and, if he did, he did not intend serious injury. However, a plea of not guilty puts all aspects of the charge in issue, and the State may prove its case with any evidence it desires, regardless of the defendant's willingness to stipulate. (*People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537, 541; *People v. Jurczak* (1986), 147 Ill. App. 3d 206, 213, 497 N.E.2d 1332, 1338.) Gruesome and cumulative evidence may properly be admitted. *People v. Foster* (1979), 76 Ill. 2d 365, 377-78, 392 N.E.2d 6, 11; *Jurczak*, 147 Ill. App. 3d at 213, 497 N.E.2d at 1338.

■ It is true that admissibility of evidence may also depend upon whether the probative value outweighs its prejudicial effect to the defendant. (See *People v. Monroe* (1977), 66 Ill. 2d 317, 323, 362 N.E.2d 295, 297.) It is the function of the trial judge to weigh the probative value and potential prejudicial effect of such evidence. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203, 209.) The exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant. *People v. Williams* (1983), 97 Ill. 2d 252, 291, 454 N.E.2d 220, 238.

■ The velocity of the piece of concrete which hit the victim in this case is established in part by the evidence from the observing witnesses and in part by the injury to the victim. A State witness indicated that the defendant threw it with force. Defendant, while denying throwing the concrete through the left window, said he did not intend injury. The velocity is then circumstantial evidence of intent and is relevant. Proving the seriousness of the injury was the State's right, and it was important in establishing the velocity. The trial judge did not abuse his discretion in allowing the victim's wife to testify and allowing the jury to see the victim with the indentation in his head.

### III

The jury was instructed as to the definition of battery and aggravated battery, as is provided by Illinois Pattern Jury Instructions, criminal. During deliberations, a note was sent to the court which stated: "On the first proposition for Agg. Batt. clarify is it intent to throw the Rock and it Resulted in great Bodily Harm or is it to throw it the Rock intending to do great Bodily Harm."

The defense counsel requested that the court inform the jury that

the latter definition was correct. The trial court refused and entered the jury room, telling the jurors to look at the instructions and use their common sense. The verdict of guilty of aggravated battery was subsequently returned.

The instructions relating to aggravated battery follow (see Illinois Pattern Jury Instructions, Criminal, Nos. 11.05, 11.07, 11.08 (2d ed. 1981)), and were stated by the court when the judge gave instructions as follows:

"A person commits the offense of aggravated battery when he, in committing a battery, intentionally causes great bodily harm to the person harmed. A person commits the offense of battery when he intentionally, without legal justification, and by any means, causes bodily harm to another person. To sustain the charge of aggravated battery, the State must prove the following propositions: First, that the Defendant intentionally, without legal justification, caused great bodily harm to LaVern Ulland, and, second, that the Defendant was not justified in using the force which he used. If you find from your consideration of all of the evidence, that each one of these propositions has been proved, beyond a reasonable doubt, you should find the Defendant guilty. If you find from your consideration of all of the evidence, that any one of these propositions has not been proved beyond a reasonable doubt, you should find the Defendant not guilty."

This recitation was a combination of People's instructions Nos. 8, 9, and 10. Instruction No. 8, which was submitted to the jury on a separate sheet, provided:

"A person commits the offense of aggravated battery when he, in committing a battery, intentionally causes great bodily harm to the person harmed."

■ The general rule as to clarification of instructions is set forth in *People v. Harmon* (1968), 104 Ill. App. 2d 294, 301, 244 N.E.2d 358, 361, quoting 23A C.J.S. *Criminal Law* §1376, at 1000, as follows:

" 'If jurors differ as to the instructions they should come into court and have them repeated, or if they wish more information as to the law they should request it of the court, and it has been held that it is not only the right but the duty of the court to reinstruct on any question of law arising from the facts on which the jury say they are in doubt, and on which they ask further instructions. Where the jury make their difficulties explicit, the judge should clear them away with concrete accu-

racy; and where the question asked is not clear, it is the duty of the court to seek clarification.' "
See also *People v. Land* (1975), 34 Ill. App. 3d 548, 550, 340 N.E.2d 44, 46 (wherein the trial court was reversed when the jury was not allowed to express its confusion); *People v. Morris* (1980), 81 Ill. App. 3d 288, 290, 401 N.E.2d 284, 286 (wherein the jury requested direction relative to burglary conviction where a defendant may not have entered the residence and the accountability instruction had not been given); *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622, 627 (wherein the trial court refused to clarify the issue of when a forcible felony began).

However, the general rule is tempered by the rule that the trial court may properly exercise its discretion and decline to answer the jury's inquiries where the given jury instructions are readily understandable and sufficiently explain the relevant law. *People v. Palmer* (1982), 111 Ill. App. 3d 800, 807, 444 N.E.2d 678, 683.

■ Normally, the Illinois Pattern Jury Instructions as to aggravated battery are readily understandable. In this case, however, a different situation arises because of the issue earlier discussed, *i.e.*, the presumption that a person intends the natural and probable consequences of his act. No instructions relative to this issue were given to the jury. Hence, when the jury indicated confusion as to whether the required "intent" was to throw the rock, doing great bodily harm, as contrasted with throwing the rock intending to do great bodily harm, additional clarification was required. If not, it is possible, regardless of the instruction defining aggravated battery, that the jury could have based its verdict of guilt on finding that the defendant did intend throwing the concrete, but without finding that beyond a reasonable doubt the defendant intended to cause the great bodily harm.

We realize the apparent clarity of the aggravated battery instruction, but also recognize the confusion caused by the particular facts and arguments in this case. This cause must be reversed and remanded for a new trial.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE STEIGMANN, dissenting:
Because I do not agree with the majority that the trial court abused its discretion in choosing not to respond to the jury's inquiry, I respectfully dissent. There was nothing unusual or particularly diffi-

cult about the evidence before the jury in this case nor the issues it was called upon to resolve. Accordingly, in my judgment, there is nothing in this record upon which the majority can find an abuse of the trial court's discretion.

I fear that a reversal on the facts in this case will have serious consequences. Deliberating juries frequently ask questions, some of which make sense, many of which do not. This reversal sends a strong message to trial judges throughout the State that the appellate courts are going to be second-guessing the exercise of their discretion if they decline to answer jury questions; therefore, they would be foolish to do so.

One can only shudder at the likely responses judges will feel forced to give to jury questions, particularly when those responses by definition are without any guidance, such as a standard IPI-Criminal instruction, and frequently must be given during the long hours of jury deliberation, when both court and counsel usually are not performing at their best.