(No. 14634.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JACOB KLEIN, Plaintiff in Error.

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. CRIMINAL LAW—*when evidence that defendant was intoxicated is proper.* In a prosecution for murder, where it is charged that the homicide was committed during the commission of an unlawful act in reckless disregard of life, statements of the defendant tending to show that he was intoxicated are admissible in evidence.

2. SAME—*what evidence as to custom is not proper in trial of officer for murder.* In the prosecution of a deputy sheriff for murder committed by recklessly shooting at a passing automobile, other peace officers in the community cannot be permitted to testify that the action of the defendant in connection with the shooting was the customary method adopted by such officers to stop speeding, as evidence of a custom cannot be set up in defense of a prosecution for crime.

3. SAME—*officer cannot use deadly weapon to effect arrest for a misdemeanor.* An officer, generally, may use a deadly weapon, even to the extent of taking life, if necessary to effect the arrest of a felon, for the reason that the safety of the public is endangered while the felon is at large, but except in self-defense an officer cannot use a deadly weapon or take life to effect an arrest for a misdemeanor, whether his purpose is to kill or merely to stop the offender's flight and even though the arrest cannot be made otherwise.

4. SAME—*when instruction as to reasonable doubt is sufficient.* It is not improper to instruct the jury that to justify an acquittal a doubt must arise from a candid and impartial consideration of all the evidence in the case, without adding or giving an additional instruction as to a doubt arising out of a lack of evidence, particularly where more than enough instructions are given on the subject of reasonable doubt.

5. SAME—*when instruction as to malice aforethought is not improper.* An instruction that "the words 'malice aforethought' do not necessarily imply the lapse of a considerable time between the malicious intent to take life and the actual execution of that intent" is not improper as ignoring the element of deliberation, where other instructions help to define the term. (*Marzen* v. *People,* 173 Ill. 43, distinguished.)

6. SAME—*instructions must be considered together.* It is not necessary that each instruction in the series shall contain the whole

of the case or call the attention of the jury to all the contentions of the respective parties, but it is sufficient if the series, construed as a whole, fully and fairly announce the rules of law applicable to the theory of the prosecution and that of the defense.

7. SAME—*what action of court while reading instructions is not prejudicial.* The action of the court cannot be regarded as prejudicial error in reading a portion of an erroneous instruction and tearing the same from the given instructions and informing the jury that it will not be given.

8. SAME—*when form of verdict does not render it void.* A verdict finding the defendant guilty of murder and fixing his punishment "at imprisonment in the penitentiary for a term of fourteen years,—not less than fourteen years," provides for the minimum term of fourteen years as fixed by the statute, and the language "not less than fourteen years" may be regarded as surplusage.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. C. F. IRWIN, Judge, presiding.

MIGHELL, GUNSUL & ALLEN, CHARLES W. HADLEY, and G. H. BUNGE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, C. W. REED, State's Attorney, and GEORGE C. DIXON, (T. H. SLUSSER, and RUSSELL W. KEENEY, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted of the murder of Leo E. Neumann. The circuit court of DuPage county entered judgment on the verdict, sentencing plaintiff in error to the State penitentiary for a period of fourteen years. The cause is brought here for review.

The killing is admitted. The only question of fact in the case is whether it was accidental or whether under circumstances showing it to have been murder.

About 8:30 o'clock on Sunday evening, September 25, 1921, the deceased, his wife and daughter, with Gust Vorreyer and his wife, were riding east in a one-seated runabout automobile on the public highway near Downers Grove, in DuPage county. On the day previous they had driven from

their homes in Chicago to the home of Ed. Schrader, in Will county, and were returning to Chicago through the neighborhood in which plaintiff in error resided at the time the killing took place. The undisputed evidence shows that the defendant, who was a deputy sheriff of DuPage county, was walking west on the highway toward his home when the machine in which deceased was riding passed him, going east. At the time the machine passed him on the road he shouted for the driver to stop, and pulling a gun fired a shot through the back of the car, the bullet striking the deceased between the eleventh and twelfth ribs, at the right side of the spine, and penetrating to the outer wall of the abdomen. The machine was stopped in front of the house of Ted Shurn, which, according to the testimony of plaintiff in error, was less than 300 feet from the place where he was standing at the time the shot was fired. Mrs. Vorreyer, who was a sister-in-law of the deceased, was seated on his lap in the car on the right side, holding to the right door of the car. When the deceased was shot his body stiffened under the shock, causing her to lose her balance and fall out of the car. At the time the car stopped she lay at the roadside, near the rear part of the car. The occupants of the car called for help and aroused the Shurns, who came to their assistance, and the deceased was taken from there to the residence of William F. Andermann and from there to the Hinsdale Sanitarium, where he died while on the operating table.

There is, as we have said, no denial of the killing, but plaintiff in error contends that it was accidental; that he saw the lights of the machine in which the deceased was riding, the car coming at a high rate of speed; that he stepped into the road in front of it when it was about 100 feet away and shouted to the occupants to halt, at the same time showing his official star; that they nevertheless came on, and as they swerved around him he stepped to one side and the machine passed him, going at a high rate of

speed; that he drew his pistol and turned and fired a shot into the air as a warning for them to stop; that the machine did not stop but continued on over the hill, past Shurn's place; that he heard no sound and went on home; that a short time after he had reached home a neighbor called him and told him that a man had been shot out on the road in front of Shurn's, and he replied that some speeders were going by and that he shot in the air to warn them and it may be that he hit one of them, although he did not think so. Plaintiff in error also testified that the car was a considerable distance past him, going up the hill in front of Shurn's house, when he fired.

The circumstances surrounding the killing and the motive of plaintiff in error in firing the shot are the only controverted questions. The testimony for the State, given by four of the occupants of the car, is that they were not traveling at a high rate of speed; that the road was rough; that there were five of them in this one-seated roadster, which was an old car, built in 1913; that they, in addition, had a quantity of eggs and milk in the back of the car which were not damaged by the travel; that they saw a large man, whom they afterwards identified as the plaintiff in error, step out into the road when they were within about 50 feet of him, and heard him shout as the car was passing, "Hey!" or "Halt!" that almost immediately thereafter the shot was fired. Some of the occupants of the car testified that they saw the flash of the gun. The bullet passed through the upholstered back of the seat of the car just above the metal part of the body, and the autopsy showed it passed almost through the body of the deceased in a practically horizontal line, with a very slight inclination upward. Numerous witnesses called for the State testified that the plaintiff in error on that night stated in the presence of officers who had been called there, and of others, that the car was coming toward him at a terrific rate of speed; that he called to the occupants to halt, and when they did

not do so he took a shot at them. Some of the witnesses testified that he said he shot into the car; others testified that he said he shot at them; one witness for the State testified that he said, "When the speeders don't stop you know what they get;" another testified that he said, "It took just one shot to get him." This is in contradiction of his testimony that he shot in the air as a warning for the occupants of the car to stop. The evidence as to his statements concerning the manner of his shooting was conflicting. Some of the witnesses for the defense contradicted the testimony of witnesses for the State concerning such statements and testified in corroboration of plaintiff in error.

Plaintiff in error assigns numerous errors on the record. He contends that the verdict is contrary to the weight of the evidence, and that the court erred in giving and refusing instructions and in the admission of testimony.

Concerning the first objection, the issue was whether or not the plaintiff in error was justified in firing the shot as he did, or whether the act was done with a reckless disregard for human life, which makes the offense murder. The evidence in the record on this point is conflicting. Plaintiff in error testified that the car disappeared over the hill after he fired the shot and that he went on home because he supposed it had left; that he did not hear a sound. The testimony of Mr. and Mrs. Shurn was that they heard the shot, and although one of them was in the house and the other was over 200 feet from the road, they heard screaming and calls for help. The occupants of the car testified to the screaming of the women of the party, and also that they called to the party who did the shooting to come and help them,—that a man was shot,—but that he did not come. The greater weight of the evidence shows that the car in which the deceased was riding stopped in front of the driveway into Shurn's place, which is near the top of a rise of ground less than 300 feet from where the plaintiff in error said he was standing. The summit of the rise

of ground, as appears from the record, is a short way beyond the roadway into Shurn's place, where the car stopped. Plaintiff in error testified that the lights of the car were burning. This was also testified to by others who saw the car after the shooting. Plaintiff in error does not explain how it happened that he did not hear the screaming for help nor see the car, as it stood less than 300 feet from him, on his side of the rise of ground. These circumstances argue most potently against the contention of plaintiff in error that he was attempting to make an arrest. Had such been his purpose, the natural thing for him to have done would have been to go to the car after it had stopped, for the purpose of arresting the driver. It does appear that when he received a telephone call saying that a man had been shot, he said that the man may have been in the machine that he tried to stop on the road. The question of the motive of plaintiff in error in firing the shot was one of fact for the jury to decide, and we cannot say that they were not justified in deciding that he was not engaged in the discharge of his duties as an officer at the time he fired but that such was an illegal act. / Even though it were to be conceded that the evidence shows that the shooting was not done in reckless disregard of human life but in an attempt on the part of the accused to make an arrest, there was no justification for his firing his gun for such purpose. The offense, if one was being committed by the deceased and his companions, was but a misdemeanor. An officer, generally, may use a deadly weapon, even to the extent of taking life, if necessary to effect the arrest of a felon, for the reason that the safety of the public is endangered while such felon is at large; but the rule, by the great weight of authority both in this country and in England, is, that except in self-defense an officer may not use a deadly weapon or take life to effect an arrest for a misdemeanor, whether his purpose is to kill or merely to stop the other's flight. This is true, even though the offender cannot be taken other-

wise. *State* v. *Smith,* 127 Iowa, 534; *State* v. *Sigman,* 106 N. C. 728; *Conraddy* v. *People,* 5 Park. Crim. (N. Y.) 234; *Commonwealth* v. *Longhead,* 218 Pa. 429; *Forster's case,* 1 Lew. C. C. (Eng.) 187; 5 Corpus Juris, 426; Wharton on Homicide, (3d ed.) sec. 500.

It is objected that the court erred in admitting testimony of statements made by plaintiff in error to the effect that he had been drinking at Shurn's place that evening. The record, without dispute, shows that he had spent the early part of the evening at Shurn's, and that the Shurn residence is about half a mile east of his own residence, on the same road; that he had just left Shurn's residence and was walking home at the time the shooting occurred. The testimony of the State's witnesses was to the effect that when the police officers and others came out from Downers Grove they went to plaintiff in error's place and he got in the car with them to look up the man that was shot; that when they reached Shurn's someone asked if that was the place where the man was to be found, and plaintiff in error replied that it was not,—that that was the place where he and others had been drinking whisky that evening; that when they reached Andermann's house someone suggested that the plaintiff in error was drunk, and that he called to several persons and asked them to ask him questions to see whether he was drunk; that he got out of the automobile and went to several persons and asked them if they would not ask him questions to see whether or not he was drunk. Some of the witnesses also testified that he stated to his son, Roy, in answer to an inquiry from the latter as to how he came to be on the road that time of night, that he had been over to Shurn's, drinking. The State sought to show by the testimony of witnesses whether or not the plaintiff in error was drunk or sober on that evening. This testimony was objected to on the part of counsel for plaintiff in error and the objection was sustained. The argument in support of plaintiff in error's contention that it was error

to admit evidence as to his statements appears to be that as drunkenness was not set up as a defense, the introduction of such testimony had the effect, only, of prejudicing the jury against the plaintiff in error.

The contention of plaintiff in error is that the killing was an accident and occurred while he was in the performance of his official duties, and that he was acting lawfully at the time he fired the shot. The State argues that the statements of plaintiff in error as to his drinking intoxicating liquor had an important bearing on the crime itself and on the defense interposed, for the reason that it bore upon the question whether or not the shooting was done in reckless disregard for human life. This question received consideration in the case of *Miller* v. *People,* 216 Ill. 309. In that case the plaintiff in error, Isaac Miller, the village marshal, was convicted of the crime of murder for the killing of James Lake. The deceased, with some companions, was driving through the village at an immoderate rate of speed. The village marshal attempted to stop them. He fired a number of shots, one of which struck the deceased and killed him. On the trial of the case Miller testified, and was asked on cross-examination whether or not he was intoxicated at the time of the shooting. The jury disagreed, and on the second trial Miller did not testify but his testimony relative to the question of his intoxication was offered in evidence. The defense in that case was that he acted in self-defense. In overruling this contention this court said: "In order to arrive at a just and proper conclusion as to the reasonableness of the acts of the plaintiff in error on the occasion in question, we think it not at all improper that the jury should have known that he was intoxicated, if such was the fact. His ability to see and comprehend what was occurring, and to form therefrom a reasonable and well-grounded belief that he was in danger of losing his life or suffering great bodily harm, would be affected, in a greater or less degree, by intoxication. A man in a state of in-

toxication may, because thereof, misconceive his situation and surroundings, misapprehend the acts and conduct and purposes of others, and arrive at a wholly unfounded, irrational and unjustifiable belief of personal danger which would not find lodgment in his mind if his mental faculties were not in an abnormal condition." The rule is that where the commission of a previous offense has no connection with or relation to the crime charged or any ingredient thereof, and only tends to create a prejudice against the defendant, such testimony is incompetent. (*Addison* v. *People,* 193 Ill. 405; *Miller* v. *People,* supra.) We are of the opinion that in a case of this kind the jury, in determining whether or not the accused acted in reckless disregard of life, are entitled to know whether or not his condition of mind was in anywise affected by intoxicants. It was not error to admit the statements of the plaintiff in error in evidence.

On the trial counsel for plaintiff in error sought to show that his action in connection with the shooting was the customary method adopted by peace officers in the community. Numerous witnesses who were peace officers were placed upon the witness stand for the purpose of offering such testimony. The court refused to admit the same, and error is assigned on this ruling. While evidence of custom is sometimes admitted in civil cases where the custom is of any importance to the issue, yet we cannot conceive how it can logically be said that a custom can be set up in defense of prosecution for crime. Counsel have cited no authority for this contention and we know of none. Such a custom has never been approved and cannot be too severely condemned. (*State* v. *Cunningham,* 51 L. R. A. (N. S.) 1179; 1 Wharton on Crim. Law,—11th ed.—sec. 387.) It was not error to refuse to admit this testimony.

Counsel for both plaintiff in error and the State devote much space, in long and profuse briefs, to the argument and re-argument of objections arising over the instructions.

The questions arising on them are neither new nor novel. In the case of some of the instructions complained of, the plaintiff in error himself offered substantially the same instructions complained of and the same were given. The instructions cover 44 pages of the abstract, and it would serve no good purpose to consider in this opinion a number of the objections raised.

Plaintiff in error contends it was error to give People's instruction 9, relating to reasonable doubt, in that by it the court told the jury that a doubt, to justify acquittal, must arise from a candid and impartial consideration of all the evidence in the case, and that it did not instruct them as to a doubt arising out of a lack of evidence. Lack of evidence is lack of proof. If, on consideration of all the evidence, the jury are convinced that there is a lack of proof, they naturally have a reasonable doubt as to the guilt of the accused. Instructions in this case abound in phraseology telling the jury that it is incumbent upon the State to prove the defendant guilty beyond all reasonable doubt. We are unable to see how the jury, taking the instructions as a series, could fail to understand the rule as to the proof necessary, and while it is a metaphysical refinement recognized in legal philosophy that an insufficiency or lack of evidence may be the basis of a reasonable doubt in the minds of the jury of the guilt of the accused, yet if the State fails to offer proof showing him guilty to the degree required, such failure or lack of evidence is the cause of the doubt. We see no reason for requiring that the court give the jury the same instruction in two different styles of phraseology. The instructions on reasonable doubt were unnecessarily long and involved. As this court has frequently intimated, there is no more lucid definition of the term "reasonable doubt" than the term itself, and court and counsel would save much argument and danger from error by avoiding involved instructions on reasonable doubt.

Other instructions concerning reasonable doubt are objected to, and while they are of the class of instructions herein referred to which cannot be approved, we do not regard the giving of them as reversible error. In some of them the language objected to was used in instructions on the subject presented by plaintiff in error.

People's 16th instruction is also objected to. This instruction told the jury that the words "malice aforethought do not necessarily imply the lapse of a considerable time between the malicious intent to take life and the actual execution of that intent." Plaintiff in error cites in support of his contention that this was error, the case of *Marzen* v. *People,* 173 Ill. 43. The instruction in the *Marzen case,* in defining malice aforethought, said that "the words 'malice aforethought' do not necessarily imply deliberation or a lapse of considerable time." The instruction was there held erroneous by reason of the use of the word "deliberation." The 16th instruction, when considered with the instructions as a series, presented a correct rule of law. It is not necessary that each instruction in the series shall contain the whole of the case or call the attention of the jury to all the contentions of the respective parties. It is sufficient if the series, construed as a whole, fully and fairly announce the rules of law applicable to the theory of the prosecution and that of the defense. *People* v. *Haensel,* 293 Ill. 33; *Waller* v. *People,* 209 id. 284; *Lilly* v. *People,* 148 id. 467.

Plaintiff in error objects to the 11th instruction given at the request of the People, for the reason that it told the jury that in determining the credibility of a witness they should take into consideration "the extent to which he is contradicted or corroborated by any other credible evidence, if at all, and any circumstances that tend to shed light upon his credibility." In view of the fact that the court gave plaintiff in error's 36th instruction, embodying the same language, we will give no further consideration to this objection.

People's 18th instruction is also objected to, for the reason that it is not based upon the evidence. This instruction told the jury that if they believed, beyond a reasonable doubt, that the defendant killed the deceased and that such killing was involuntary on his part, yet if they believed that the killing occurred while the defendant was in the commission of an unlawful act which in its consequences naturally tended to destroy human life, then under such circumstances the defendant would be guilty of murder and the jury should so find. This instruction embodied the only question of fact involved in the case. The only basis upon which the plaintiff in error could be held guilty of murder would be that the killing, though involuntary, was caused by the commission of an unlawful act by the plaintiff in error which in its consequences naturally tended to destroy life. If the jury believed those witnesses who testified that the plaintiff in error said after the shooting that he shot into the car or shot at the people in the car, and if they believed that he did so shoot into the car or at its occupants, then such was an unlawful act which naturally tended to destroy human life. The instruction was on the gist of the case and was proper.

We have considered other objections to instructions given, but are of the opinion, on reading the instructions as a whole, that they fairly present the law pertaining to the case. The refused instructions offered by plaintiff in error, in so far as they present correct propositions of law, were covered by other instructions.

Counsel for plaintiff in error contend that it was error on the part of the court to read a portion of an erroneous instruction and then tear the same from the given instructions and inform the jury that it would not be given. This argument is without merit. Even assuming that the part read was, as urged by plaintiff in error, erroneous, the only inference which the jury could get from the announcement of the court that the instruction would not be given

and from tearing it out of the instructions given, was that it was not the law. No prejudice could possibly arise from such an act on the part of the court.

The jury returned a verdict finding the defendant guilty and fixing his punishment "at imprisonment in the penitentiary for a term of fourteen years,—not less than fourteen years." Plaintiff in error contends that this is a void verdict. The verdict plainly fixes the term of imprisonment at fourteen years. The statute fixes the minimum term of imprisonment to be fixed by the jury at fourteen years. The jury had no power to fix the term at less than fourteen years. The language "not less than fourteen years" is but surplusage. The judgment of the court entered on the verdict was for imprisonment for a term of fourteen years.

There is no reversible error in the record, and the judgment will therefore be affirmed.        *Judgment affirmed.*