THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESTER GRAVES, Defendant-Appellant.

First District (5th Division)    No. 80-1230

Opinion filed June 18, 1982.—Rehearing allowed May 26, 1982 and opinion filed March 26, 1982 vacated.

Ralph Ruebner and Eva Field, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Richard T. Sikes, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:
Defendant was charged by a three-count information with attempt murder, aggravated battery based on great bodily harm and aggravated battery based on the use of a deadly weapon.

Following a jury trial, he was acquitted of the first two counts and convicted of count III, aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)), and was sentenced to a term of four years imprisonment.

On appeal, he contends that: (1) he was not proven guilty beyond a reasonable doubt; (2) the information upon which he was convicted is fatally defective because it fails to sufficiently set forth the nature and elements of the offense of aggravated battery; (3) legally inconsistent verdicts were improperly rendered; and (4) his sentence was excessive.

The following pertinent evidence was adduced at trial.

On August 11, 1977, defendant was one of the employees working the midnight shift at a gauze mill plant in Bedford Park, Illinois, under the supervision of complainant Michael Lopez. At approximately 6 a.m. a meeting was held concerning defendant's recurrent tardiness to work, following which Lopez suspended him for three days. Defendant did not exhibit any anger towards Lopez at this time.

Toni Suchovsky, a gauze pad operator, testified for the State that at about 6:40 a.m. she was waiting for a mechanic to fix her machine when she happened to look up and see defendant and Michael Lopez standing face-to-face about 25 yards away. Although she heard no conversation between them, within a matter of seconds she saw defendant strike Lopez on the head, who then fell onto the floor, bleeding and shaking.

Jo Ann Brake operated machines numbered 45 and 46 about 22 yards from Toni Suchovsky's location. Although she ordinarily faced her in her normal working position, she had turned in the opposite direction to work at her packing table and saw Lopez stop to speak to another employee, Frank Zankl, before he approached defendant. They were approximately 12 feet from her location, but due to the machinery noise she could not hear their conversation until defendant began talking loudly and telling Lopez, "to get away from [me], I told you to stay away from me, leave me alone," or words to that effect.

Neither man was touching each other and neither man was holding a weapon when she turned her back to them. About one minute later she heard a thud behind her and turned around in time to see Lopez fall and raise his hands to his head, which had begun to bleed. She saw that defendant was holding a metal bar in his hand (later identified as People's Exhibit No. 1), which he tossed into the wastebasket behind her machine before looking at her and walking away.

She further testified that People's Exhibit No. 1 was a metal bar which, to her knowledge, was always positioned within brackets on the back of her machine, number 45. Since she was not facing it while working in her normal position, she did not see if defendant had removed it from the brackets.

Anna Marie Baraban, also a gauze pad operator, worked about 15

feet diagonally from Jo Ann Brake. She was talking to another employee, Frank Zankl, when she looked up and saw defendant strike Lopez with a rod which he held in both of his hands. He then turned around and put the rod in a wastebasket behind Jo Ann Brake's desk.

She further testified that People's Exhibit No. 1 was the rod with which defendant struck Lopez, describing it as a "rod for holding cotton on the back of the machine."

Frank Zankl, a material handler, was conversing with Anna Marie Baraban when Lopez, his supervisor, approached him to tell him about an upcoming meeting and then asked where defendant was. Lopez walked about 25 feet away to where the defendant was loading cotton into a bin, and began talking to him. Zankl testified that he could not hear their conversation until defendant said in a loud voice, "Get the f___ away," and Lopez, who had nothing in his hands, began to turn and walk away.

Zankl further stated that defendant then reached over to a machine which was located "a ways away" and grabbed a metal bar, or an object identical to People's Exhibit No. 1, from its location on the number 45 machine and struck Lopez on the forehead above the left eye. He fell down and was "bleeding real bad and kicking * * * nervous kicking, moving his arms all over."

Frank Zankl further testified that defendant had previously complained to Zankl about Lopez placing his hands on him and had also called for a meeting with the union steward regarding this same complaint.

All of these witnesses testified to the effect that defendant was a pleasant person to work with, that neither defendant nor Lopez had ever struck each other in the past, and that Lopez had never struck any employee.

The victim, Michael Lopez, testified that sometime after the 6 a.m. meeting where he had suspended defendant for tardiness, he went out onto the floor to tell Frank Zankl and defendant about an upcoming meeting, and as he approached, defendant was picking up waste but had nothing else in his hands. When Lopez told him that the meeting was for operators only, defendant responded with profane language. After a short conversation Lopez could recall nothing further until he regained consciousness in the hospital five days later. He testified that his memory was somewhat faulty due to his injury.

Dr. George Bryar, a neurological surgeon, testified for the State that X rays taken of Lopez' head revealed a depressed skull fracture with in-driven bone fragments, requiring two operations and the insertion of an acrylic plate to correct the skull damage. He stated that a severe head injury is sometimes accompanied by a memory loss called retrograde

amnesia whereby a patient cannot recall events prior to the time of an injury.

Lopez was later moved to Colorado for therapy and returned to work five months after the incident. He was still receiving outpatient therapy and had problems with speech at the time of trial.

Defendant testified on his own behalf that he had known Lopez for four months prior to the incident, and for most of that time Lopez would approach him daily from behind to startle him, touch him in an insulting manner and pat him on the buttocks "as if he were a woman." When asked to stop these actions, Lopez would not respond verbally but would simply stand and smile.

At one point, defendant requested a meeting with the union steward and Lopez to complain about these actions; however, this behavior continued after this meeting and despite repeated objections to Lopez.

Defendant stated that he was not angry with Lopez for suspending him, and although he had attempted to leave the premises following his suspension to conform with company policy, Lopez ordered him to complete his shift. Shortly thereafter, when Lopez threatened to terminate him, pounding a 12-inch pipe in his hands, defendant asked him to keep his distance and walked away.

A short while later, defendant testified that he was picking up some gauze and a bar from machine 45 from off of the floor when Lopez approached him for the third time from the rear, and grabbed his arm. He testified that he lost control and struck him, being in a "sort of dazed" condition at the time. He subsequently telephoned the company nurse and Christ Hospital, and became aware of the extent of the injuries sustained by Lopez. Upon learning of a warrant out for his arrest, he surrendered himself to the police.

Following defendant's conviction, the trial court heard and denied defense motions in arrest of judgment and for a new trial. The motion in arrest of judgment was based upon the insufficiency of the information upon which defendant was convicted.

### Opinion

Defendant first contends that he was not proven guilty beyond a reasonable doubt.

Defendant argues that the State failed to establish the statutory elements of intent and lack of legal justification in the proof of the offense of battery presented at trial.

It is well settled that the requisite intent with which an act is done may be inferred from the act itself, as well as by the surrounding circumstances which legitimately permit such an inference. (*People v. Jack-*

*son* (1976), 42 Ill. App. 3d 322, 355 N.E.2d 653.) Although defendant testified that he was "sort of dazed" when he struck Lopez, the trial court, as trier of fact, was not required to accept his testimony. *People v. Fender* (1980), 91 Ill. App. 3d 844, 415 N.E.2d 22.

■■ Since a person is presumed to intend the natural and probable consequences of his deliberate acts (*People v. Hartzol* (1976), 43 Ill. App. 3d 924, 357 N.E.2d 729), the jury in the present case was warranted in finding that defendant intended to hit Lopez with a metal bar, based on the evidence presented.

■■ Defendant's next contention that the State must establish a lack of legal justification is equally without merit. Although the defendant argued that he struck Lopez because he continuously touched him, he did not articulate a theory of self-defense in either his own testimony or in counsel's arguments to the court or jury.

Since a defense of legal justification, such as self-defense, is an affirmative defense (Ill. Rev. Stat. 1979, ch. 38, par. 7—14), an unfocused general reference to legal justification in the instructions would only serve to confuse the jurors when legal justification is not in issue. *People v. Worsham* (1975), 26 Ill. App. 3d 767, 326 N.E.2d 134.

Furthermore, a failure to suggest self-defense or some other defense of justification to the trier of fact constitutes a waiver of the issue. *People v. Pulley* (1973), 11 Ill. App. 3d 292, 296 N.E.2d 373, *rev'd on other grounds* (1974), 58 Ill. 2d 171, 317 N.E.2d 570.

Defendant also claims that the metal bar was improperly admitted into evidence since the State had failed to establish a chain of possession. The Illinois rule is that a proper foundation of the admission of an item into evidence may be laid either (1) through its identification by a witness, or (2) through establishment of a chain of possession (*People v. Pagliara* (1977), 47 Ill. App. 3d 708, 365 N.E.2d 72), and it is not necessary to require both methods. *People v. Hagen* (1978), 63 Ill. App. 3d 944, 380 N.E.2d 954.

■■ In the present case, three eyewitnesses positively identified the metal bar as the weapon. We find that a complete foundation was laid by the State for the introduction of this evidence and additional proof of a chain of possession was unnecessary.

Since a court of review may review all of the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt (*People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651), we may not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence and the credibility of witnesses. *People v. Sanders* (1980), 86 Ill. App. 3d 457, 407 N.E.2d 951.

In the present case there was no evidence presented to support a

finding that defendant acted in self-defense. There was ample evidence presented, however, including defendant's own testimony, to support a finding of guilt beyond a reasonable doubt.

We turn now to defendant's contention that count III is fatally defective because it failed to charge the necessary elements of the offense of aggravated battery as required by section 111—3(a)(3) of the Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a).

The purpose of section 111—3(a) of the Criminal Code is to make certain that the accused will be adequately informed of the nature and elements of the offense charged against him so that he may be able to prepare his defense and protect himself from double jeopardy by subsequent prosecutions for the same offense. *People v. Tucker* (1973), 15 Ill. App. 3d 1003, 305 N.E.2d 676.

As the court in *People v. Patrick* (1967), 38 Ill. 2d 255, 258, 230 N.E.2d 843, 845, observed: "An indictment which charges an offense in the language of the statute is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged."

Count III of the information, on which defendant was convicted, charged that he "committed the offense of aggravated battery in that he, in committing a battery on Michael R. Lopez, by striking him on the head with a metal object, used a deadly weapon in violation of ch. 38, section 12—4(b)(1), Ill. Rev. Stat. 1979."

Defendant argues that count III fails to allege that the underlying battery was committed: (1) "without legal justification," (2) "intentionally or knowingly" and (3) "caused bodily harm or made physical contact of an insulting or provoking nature."

The relevant statutes in pertinent part provides:

"§12—3. Battery (a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." Ill. Rev. Stat. 1979, ch. 38, par. 12—3(a).

"§12—4. Aggravated Battery

* * *

(b) A person who, in committing a battery, commits aggravated battery if he either:

(1) uses a deadly weapon;

* * *."

Ill. Rev. Stat. 1979, ch. 38, par. 12—4.

With respect to defendant's first contention we note that since the

statute defining the underlying battery already contains all of the elements necessary to constitute this offense, including a lack of legal justification (Ill. Rev. Stat. 1979, ch. 38, par. 12—3), an indictment is not fatally defective if it fails to allege that the battery was "without legal justification." *People v. Harvey* (1973), 53 Ill. 2d 585, 294 N.E.2d 269.

■■ Similarly, while the information in issue did not explicitly allege that defendant acted intentionally or knowingly in the commission of a battery, use of the technical term "battery" implicitly fulfilled the required element that defendant acted knowingly. *People v. Tucker* (1973), 15 Ill. App. 3d 1003, 305 N.E.2d 676.

Citing as authority *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37, and relying principally upon *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171, defendant contends that because the information fails to charge either that the physical contact was of an insulting or provoking nature, or caused bodily harm, it was subject to dismissal. However, we are of the opinion that the facts of the instant case are clearly distinguishable from the *Abrams* and *Lutz* decisions.

A review of the facts involved in these two decisions is helpful in ascertaining the inappositeness of these cases as authority.

In *Abrams*, the offense stemmed from the defendant's attempt to retrieve a cup containing an alcoholic beverage from a police officer's hand, whereby, in her efforts to take it, she struck him several times. The defective complaint merely alleged that the defendant committed the offense of battery against the officer in that she " 'knowingly and intentionally and without legal justification *made physical contact with complainant herein without the consent of said complainant.*' " (Emphasis added.) 48 Ill. 2d 446, 460.

We agree, and defer, to the supreme court's analysis that the emphasized language in the *Abrams* complaint was ambiguous, thereby violating the rule that the words alleging an offense must so far particularize the offense so that by their use alone an accused is informed with reasonable certainty of the precise offense with which he is charged. *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.

Similarly, in *Lutz*, the indictment charged that the defendant: "committed the offense of AGGRAVATED BATTERY, in that he did knowingly and without legal justification in committing a battery on Dan Wilson *use a deadly weapon, to wit: a firearm,* * * *.*" (Emphasis added.) 73 Ill. 2d 204, 208.

Although the exact nature of the underlying offense in *Lutz* was not set forth in the body of the opinion, we agree with the supreme court's determination that the complaint involved did not make sufficiently clear which one of the alternative methods of committing the offense was being alleged.

In contrast, the situation presented here is clearly distinguishable. Illinois courts have held that it is sufficient to allege an offense by specifically alleging all the facts which constitute the crime. *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37.

While neither the comparable language in *Abrams* ("made physical contact"), nor in *Lutz* ("use a deadly weapon, to wit: a firearm"), sets forth the facts constituting the crime, we find that this requirement is satisfied by the key language in the present case, which alleges commission of the offense of battery *"by striking him on the head with a metal object, used a deadly weapon."*

Furthermore, as the court in *People v. Bowman* (1971), 132 Ill. App. 2d 744, 746, 270 N.E.2d 285, 287, wisely enunciated in its well-reasoned opinion: "It is not necessary that a complaint contain the precise language of the statute defining the offense if it describes the offense in language sufficiently explicit for the defendant to understand the nature and elements of the charge against him. [Citations.]" The complaints stated the offense alleged to have been committed, cited the criminal statute which the defendants were accused of violating, and charged that the statute was violated due to the defendants striking the complainant about the head and body. The variance between the language of the complaints and that of the statute is inconsequential. Striking the complainant "about the head and body," described with specificity the "physical contact of an insulting or provoking nature" prohibited by the statute. The complaints informed the defendants with reasonable certainty of the charge against them and were sufficient to charge the offense of battery.

Applying the foregoing principles to the present case, the language which sets forth a "striking him on the head with a metal object," in conjunction with "used a deadly weapon," both in addition to citation to the applicable statute, "Ch. 38, section 12—4(b)(1)," clearly indicates the commission of a battery which has caused bodily harm to an individual.

Moreover, the defendant in the instant case was informed of the severity of Lopez' injury in his conversations with the company nurse and the hospital spokesman, before he turned himself in to the police. In fair conscience, it can hardly be said that a question as to which alternative had been alleged would remain. Consequently, we are not persuaded by the defendant's persistent argument that he was not apprised with reasonable certainty of the precise offense with which he was charged.

We note that Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." We find that the variance in the information in the present case did not affect defendant's substantial rights because the totality of the information apprised him of the charge against him.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.