THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD SPREYNE, Defendant-Appellant.

First District (6th Division)    No. 1—88—1816

Opinion filed November 5, 1993.—Rehearing denied December 16, 1993.

506

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Veronica X. Calderon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Harold Spreyne, was convicted of the criminal sexual abuse of K.J. and was sentenced to probation for one year with the first 60 days to be served in the Cook County Department of Corrections. We will first consider the defendant's argument that he was not proved guilty beyond a reasonable doubt.

K.J. testified that she had been employed as a Chicago Board of Education custodial worker since April 1985. On July 29, 1987, she was assigned to summer duty at the Beale School (Beale), where she had worked for one year. Her duties included cleaning the restrooms "and things like that." Her supervisor was on vacation, and the defendant, a building engineer, was the substitute supervisor at Beale. She had never met him before. On Monday, July 27, she was scheduled to return to work from her own vacation, but she did not

go to work. She initially denied calling in Monday to explain that she would not be at work; later she testified that she called the defendant Monday morning before 9 a.m. She also did not attend work on Tuesday; she was not sure what the proper call-in procedure was at Beale, but knew she should call before "they leave" Beale in the afternoon on the day before she would be absent. She did not call the school Monday afternoon to explain that she was not coming to work Tuesday. She did call Tuesday morning, spoke to the defendant, and told him she would call before 8 a.m. Wednesday if she also would be absent Wednesday. She went to work on Wednesday, although she "got there kind of late."

On Wednesday morning she was working in the school lunchroom when Rodney Wills (Wills), another custodial worker who was K.J.'s friend, told her that the engineer, the defendant, wanted to see her. She walked from the lunchroom down a flight of stairs to the basement, where the boiler room and engineer's office were located. This happened at 9:30 a.m. Summer school at Beale, which involves less students than regular school, was in session on July 29, 1987, and the students began class at 9 a.m. She did not see any students that morning nor did she see many adults. She testified that there was a "classroom" right next to the boiler room but, to her knowledge, it was used only for "one or two" school purposes and not for actual classes.

She testified that the boiler room was about as large as the courtroom, contained two boilers, an employee time sheet table, the engineer's office and a restroom. When she entered the room, she saw the defendant, who asked if the name she signed in with was her right name. They were both standing approximately 15 feet from the door, near one of the boilers and near the time sheet table. K.J. carried into the room a garbage can she intended to clean, and she stood approximately two feet away from the defendant. He asked K.J. if she liked her custodial job. She told him that she did like her job; and he asked her if she wanted to receive payment for Monday and Tuesday, when she did not come to work. When she asked him "why did he want to do that," he told her, "Do you know you can't go anyplace else in the city of Chicago and have a good job like this?" She testified that the following then occurred:

> "[The defendant] asked me was I married, and I said no, and he asked me did I drink, and I said no, and he asked me to go to a bar with him and have something to drink and I said 'I am not going anyplace with you.' And he said, 'I am going to go out and buy some beer and we will go to the back room and we will have something to drink,' and I said, 'I am not going to have anything to drink. I don't drink.'"

On redirect examination, K.J. testified that the defendant was drunk and smelled of alcohol.

K.J. turned to leave the room to clean the garbage can when the defendant "stopped her"; he "approached" her, "touched [her] chest," and "started feeling on [her] breast." He "stopped" her by putting his hands on her breast. She testified that while the defendant did this, "[h]e said he was going to have [her]." She told him to leave her alone, turned to go upstairs, and felt the defendant grab her right arm. Next, he "grabbed [her] hands *** and was pressing against [her] with his penis, and had [her] hands." She "was trying to get away" from the defendant and "got loose" but the defendant "pushed [her] and [her] back was against the wall." She described the defendant's actions as being "just all over [her]." He did not scratch or bruise her, but her wrists were sore. Eventually, she broke away and ran upstairs. She did not scream at any time, but while in the boiler room she repeatedly told the defendant to stay away from her, and she was "terrified" and crying when she ran up the stairs.

K.J. testified that a button was broken off her shirt "during the struggle," and she had to "have a chain in the top button" because it was broken by the defendant. She also testified that her clothes were "messed up" after the incident.

When K.J. ran from the boiler room, she did not see any children or adults. She ran past the school office and down the hall, where she saw Wills. She told Wills that the defendant tried to rape her, and Wills tried to calm her and took her into a room where she stayed with him until she calmed herself. She left the room and went to the office, where she told her supervisor's secretary and other office staff that the defendant "tried to rape" her. Though the secretary asked her not to call the police, K.J. used the office phone to call the police and reported the incident as an attempted rape. After she called the police, she saw another friend, Willie Flowers (Flowers), who worked as a security guard at Beale. He asked her what happened, and she told him "the engineer just attacked me downstairs." After hearing this, Flowers left the office. The police arrived.

Rodney Wills testified that he had known K.J. for some time. He also knew the defendant. At approximately 8 a.m. on July 29, 1987, the defendant asked Wills to "go out and buy beer for him." Wills bought Old Milwaukee beer, took it to the defendant in the boiler room, and left the basement. Then Wills followed the defendant's instructions and told K.J. to go downstairs and meet with the defendant. Shortly thereafter, K.J. ran into a room where Wills was working. She was crying and upset, but had no visible scratches or bruises. Her clothing was "wrinkled or disheveled," and K.J. told

Wills that the defendant tried to rape her. K.J. asked Wills to stay with her, and the police were called. Wills later testified in rebuttal that after talking to K.J., he went to the boiler room and saw the defendant "drinking two Budweisers, one in each hand."

Willie Flowers testified that he saw K.J. at approximately 9:30 a.m. and that "she looked upset." She told him that the defendant had attacked her and tried to rape her.

The defendant was 49 years old at the time of the incident; he was approximately 6 feet 1 inch tall and weighed approximately 170 pounds. He testified that he was assigned to Beale on Monday and that part of his duties involved monitoring and submitting employee time records to the payroll department. He testified that K.J. never called to report her Monday and Tuesday absences. When he noticed that K.J. had signed in on Wednesday morning, he asked Wills to tell K.J. to come to the boiler room.

When K.J. came downstairs, the defendant told her that he had "heard her work was good," despite the fact that "he had also heard some bad things about her." He told K.J. that she was wrong not to call about her absences, and that if she had missed three days in a row, he would have been forced to call a substitute and she would have been assigned to another school. He testified that he had only this brief conversation with K.J. before she left. He did not touch K.J., "did not ask her for a date or a drink after work," and did not offer her a drink at school. He did not see anyone else that morning and stayed in the boiler room working until the police arrived. He did not drink any alcohol on that day. He drank only on special occasions and the last time had been at a wedding.

■ The defendant maintains that the State failed to prove the elements of the offense. The statute provides that criminal sexual abuse occurs when the defendant makes intentional or knowing sexual contact by the use of force or threat of force. (Ill. Rev. Stat. 1987, ch. 38, par. 12—15(a)(1).) The defendant does not argue that the evidence does not show sexual contact or the use of force. His argument, rather, is that the force must precede or be simultaneous with the sexual contact and that the evidence here shows that no force occurred until after he had touched K.J.'s breast.

We have recently considered the same argument in *People v. Fryer* (1993), 247 Ill. App. 3d 1051, 618 N.E.2d 377, in which we affirmed a conviction of aggravated criminal sexual assault. The defendant argued that no force was exerted against the victim until after the sexual assault. We cited *People v. Colley* (1989), 188 Ill. App. 3d 817, 644 N.E.2d 812, in which the court affirmed a conviction for aggravated sexual assault, saying:

"Here, the evidence showed that the defendant stabbed the victim soon after the sexual acts were completed. Under the instant circumstances, we will not draw a bright line between the ending of the sexual acts and the bodily harm occurring afterward, as that would defeat the statutory purpose of protecting victims from sex offenders. We find that the stab wounds occurred sufficiently close in time to the sexual acts that they can be said to have been committed during the course of the sexual assault." (*Colley*, 188 Ill. App. 3d at 820.)

So also in this case, we hold that the force exercised by the defendant was sufficiently close in time to the act of sexual contact to meet the requirement of the statute.

■ The defendant next argues that the judge improperly permitted the State to amend the complaint. The original complaint gave the date, time and place of the offense and stated that the defendant:

"committed the offense of Criminal Sexual Abuse in that he committed an act of sexual conduct to wit: offender grabbed victim's breasts, and placed victim's hand on his penis through his clothing. Harold SPREYNE twisted victim's arm and pushed her against a wall during these acts."

On the first day of trial, before any witnesses testified, the State was permitted to amend the complaint over the objection of the defendant. The amended complaint again alleged that the defendant committed criminal sexual abuse, and reads:

"he committed an act of sexual contact by use [of] force or the threat of force to wit offender grabbed victim's breasts, through her clothing, and twisted victim's arm and pushed her against a wall during these acts."

The defendant argues that the original charge was void in that it did not allege that the acts committed by the defendant were done "by use of force or threat of force." The question, therefore, is, does an allegation that a defendant twisted the victim's arm and pushed her against a wall amount to an allegation that the defendant's acts were committed by force? We believe that it does.

In *People v. Graves* (1982), 107 Ill. App. 3d 449, 437 N.E.2d 866, the defendant was charged with and convicted of aggravated battery. The complaint on which the defendant was convicted charged that he "committed the offense of aggravated battery in that he, in committing a battery on [the victim], by striking him on the head with a metal object, used a deadly weapon in violation of [the aggravated battery statute]." The defendant argued that the complaint was defective because it did not allege that the battery was committed "without legal justification," "intentionally or knowingly" and "caused bodily harm or made physical contact of an insulting or

provoking nature." The appellate court rejected all of the arguments of the defendant and specifically held that the allegation, "striking him on the head with a metal object," in conjunction with "used a deadly weapon," and the citation of the applicable statute clearly indicated the commission of a battery which had caused bodily harm to an individual.

In the case before us, the factual allegations in the original complaint, plus the reference to the applicable statute, sufficiently apprised the defendant that he was being charged with the commission of sexual acts by force or the threat of force. The original complaint, therefore, was not void. It necessarily follows that the amendment, which did not take the defendant by surprise, was proper. We note in passing that when the defendant's attorney objected to the amendment of the complaint, he argued that the addition of the words, "force or threat of force" would overemphasize that element. We interpret that remark to be an implicit recognition that the original complaint alleged that the sexual acts were done with force.

■ The defendant next argues that error occurred in the introduction of evidence that he was drinking alcohol on school property before and after the incident. He maintains that such evidence was inadmissible on the same ground that proof of other crimes is inadmissible. In a case not cited by either party, *Addison v. People* (1901), 193 Ill. 405, 62 N.E.2d 235, the defendant was convicted of assault with intent to rape a 13-year-old girl. The State introduced evidence that the defendant had been drinking intoxicating liquor an hour before the assault in his office, that he had been drinking before that time at another location, and that he treated a 16-year-old boy to beer. The supreme court held that the evidence was similar to proof of other crimes and concluded that the evidence of intoxication was not admissible as an exception to the general rule barring evidence of other crimes. We believe the testimony of K.J., however, that the defendant was drunk and smelled of alcohol was admissible under the *res gestae* exception to the rule. See *Rafferty v. People* (1872), 66 Ill. 118.

After the defendant testified, he became like any other witness, and the State was permitted to show his intoxication at the time of the occurrence and, therefore, that his ability to see, understand and remember what had transpired was affected. (*People v. Klein* (1922), 305 Ill. 141, 137 N.E. 145; *Miller v. People* (1905), 216 Ill. 309, 74 N.E. 743.) When the defendant testified that he did not drink any alcohol that day, his testimony was properly rebutted by Rodney Wills. Wills' testimony in the State's case in chief that he bought beer for the de-

fendant was properly admitted as corroboration of K.J.'s testimony, which we have held was properly admitted.

■ The defendant next contends that error occurred during the jury's deliberation. The jury received instructions on criminal sexual abuse, including the instructions that give the statutory definitions and requirements of "criminal sexual abuse," "sexual conduct," and "the use of force or threat of force." The jury was instructed that "[t]he term sexual conduct means any intentional or known touching or fondling by the accused either directly or through the clothing of the breasts of the victim." The jury was then told that to find the defendant guilty of criminal sexual abuse, the jury had to find that he "committed an act of sexual conduct upon [K.J. and] *** the act was committed by force or threat of force."

After deliberating from 9:40 a.m. to 11:20 a.m., the jury sent a written note to the judge. The note asked: "Was the charge of sexual abuse merely the touching of the victim's breasts or does it also include the accused pressing his penis against her as well[?]" The judge asked the attorneys what answer they wanted to give to the jury. The State requested that "the instructions as given stand." The defendant's attorneys explained that "they're asking for a little more explicit instruction with that" and asked that the jury be "instructed it does not include that." The judge noted that the original complaint, which included language about sexual conduct involving the defendant's pressing his penis against K.J., was not read to the jury, and decided to "respond to the note by telling them they have heard all the evidence in the case, and they have received all the instructions in the case." The defense attorney then asked the judge to "include the phrase *** that the answer to their question is in the jury instructions that they have been provided." The prosecutor objected, and the defendant's attorney argued: "It's right in the instruction where they talk about the breasts. That's in the instruction." The judge said that he would not give the answer requested by the defendant's attorney, and wrote on the note:

> "The jury has heard all the evidence and received all of the Court's instructions. Please continue your deliberations."

The defendant contends that the judge erred by not explaining the charge to the jury more fully. He does not argue that the instructions were incomplete or ambiguous. In *People v. Reid* (1990), 136 Ill. 2d 27, 544 N.E.2d 174, the supreme court said that a trial judge has a duty to instruct the jury where clarification is requested, the original instructions are incomplete and the jurors are manifestly confused. The court also said that a trial judge has discretion to refrain from answering a jury's questions. A trial judge "may

properly exercise [his] discretion and decline to answer the jury's inquiries where the given jury instructions are readily understandable and sufficiently explain the relevant law." (*People v. Palmer* (1982), 111 Ill. App. 3d 800, 807, 444 N.E.2d 678, 683.) A trial judge may refuse to answer a jury note where further instructions or explanation "would serve no useful purpose," would "potentially mislead the jury," would "cause the court to express an opinion which would probably direct a verdict," or would involve "a colloquy" between the judge and jury. *Reid*, 136 Ill. 2d at 39-40; see also *People v. Glass* (1984), 128 Ill. App. 3d 869, 871, 471 N.E.2d 597.

We do not believe the judge abused his discretion in refusing to answer the jury's question. (See *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 559 N.E.2d 948 (judge did not err in refusing to repeat or elaborate upon previous unambiguous instructions).) The cases cited by the defendant are not apposite. In *People v. Shannon* (1990), 206 Ill. App. 3d 310, 564 N.E.2d 198, and *People v. Morris* (1980), 81 Ill. App. 3d 288, 290, 401 N.E.2d 284, the original instructions were incomplete. In *People v. Flynn* (1988), 172 Ill. App. 3d 318, 526 N.E.2d 579, the jury asked why the fifth count of the complaint against the defendant was no longer being considered, and it asked if the defense attorneys were allowed to call a codefendant to testify. The appellate court concluded that the judge's failure to answer the question could have led the jury to infer that the court was being lenient in dropping the charge or that the defendant had pleaded guilty to the missing charge. The court also reasoned that the jury could have inferred that the codefendant was not called as a witness because the defendant's attorney had learned that the codefendant's testimony would be damaging to the defendant. Factually, *Flynn* is wide of the mark in this case.

■ The defendant's last claim of error is that he was denied effective assistance of counsel. Specifically, he maintains that his attorney failed to preserve the inadequacy of the complaint for review and failed to object to the evidence of intoxication and the State's closing argument which referred to the defendant's intoxication. Because we have held that the original complaint was not void and the evidence of intoxication was properly admitted, the defendant's claim of ineffectiveness of counsel on those grounds must necessarily fall.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI and GIANNIS, JJ., concur.